THE CITY OF FORT WORTH v. W. H. DAVIS ET AL.

(Case No. 4886.)

1. CITY SCHOOL TAX — CONSTITUTIONAL LAW.— Towns and cities have no power to levy taxes for school purposes other than as expressly authorized by the constitution.

2. SAME.— Save under an express grant of power in the constitution, the legislature cannot confer upon city authorities power to levy taxes for school purposes.

3. SAME.— A city, in its capacity as a school district, has no other power to levy such taxes than can be found expressly authorized in the constitution.

4. SAME.— Construing art. XI, sec. 10, of the constitution, as follows: "The legislature may constitute any city or town a separate and independent school district. And when the citizens of any city or town have a charter authorizing the city authorities to levy and collect a tax for the support and maintenance of an institution of learning, such tax may hereafter be levied and collected, if, at an election held for that purpose, two-thirds of the tax-payers of such city or town shall vote for such tax," held,

   (1) Its first clause clearly authorizes legislation for the purpose of making such city, etc., a school district upon assuming control of its public schools.

(2) Following the legislative construction, when a city has taken control of its public schools in the mode prescribed by the statutes, it may thereafter levy a school tax, if two-thirds of its property tax-payers shall so vote.

(3) This decision is not satisfactory to the court, but it not being clearly wrong, the legislature and executive are followed and their construction allowed.

5. MODE OF ELECTION.— The constitution gives authority to levy a tax "if . . . two-thirds of the tax-payers of such city or town shall vote for such tax." These words preclude an implied assent to such tax by not voting therefor at an election held to determine upon such tax.

6. RES ADJUDICATA — ELECTION UPON SCHOOL TAX.— The action of the city authorities determining the result of such election cannot be collaterally attacked.

7. CASES QUESTIONED — CONTESTED ELECTIONS.— Notwithstanding Ex parte Towles, 48 Tex., 413, and Williamson v. Lane, 52 Tex., 336, the question of the validity of the various provisions in the Revised Statutes for contesting elections is still an open question.

8. SCHOOL TAX — MODE OF SUBMISSION TO VOTE.— The Revised Statutes, art. 3785, authorized the submission to be voted on of the question, "Shall such an amount be raised by taxation, not to exceed one-half of one per cent., in addition to the pro rata of the school fund received from the state, as may be necessary to conduct the schools for ten months in the year?" While in force it did not authorize the submission to vote whether a specific rate per cent. be levied.

9. SAME.— The submission, on March 2, 1880, by the city authorities of Fort Worth, of the question whether a school tax of one-fourth of one per cent. be levied, being before the amendment of said act, was without authority and void; and a perpetual injunction against the collection of the tax so claimed to be authorized, was sustained.

APPEAL from Tarrant.   Tried below before the Hon. A. J. Hood. The opinion states the facts.

*Ball & McCart*, for appellants.

The court below having failed to state its findings upon the law and facts (it not being necessary to do so under the circumstances), there is but one assignment of error possible in this case, viz., that the court erred in rendering judgment for plaintiffs; and, we may add, that there is but one proposition possible under said assignment, viz., that the acts of 1876 and 1879 are valid laws, and in no wise conflict with, or are prohibited by, the constitution.   Appellees, however, tender an issue, by their bill of exceptions, in regard to the court's action in refusing to admit evidence attacking the elections held by the city of Fort Worth under said acts, and tending to impeach their validity.   We submit to the court the following propositions and authorities, which we deem not only pertinent to, but decisive of, this case:

I. When a law of a state is attacked on the ground of its unconstitutionality, the *prima facie* presumption is that it is valid, and such presumption is conclusive unless it is expressly prohibited by

the constitution. Cooley on Const. Law, \*168, \*172, \*173, \*191, and authorities there cited; Sedgwick on Const. and Stat. Law, p. 411; 34 Tex., 347.

II. Section 55 of the act of August 19, 1876, is a valid law, nor is it obnoxious to sec. 35, art. III, of the constitution, or any other clause thereof (Const., art. VII, sec. 1; art. XI, sec. 10; Austin v. G. C. & S. F. R. R., 45 Tex., 267, and authorities there cited); nor is it a delegation of legislative power to the city. Willis v. Owen, 43 Tex., 61; 34 Wis., 149; Cooley, Const. Law, \*118, \*119.

III. Articles 3781 to 3793, Revised Statutes, are valid legislative enactments, and the power granted therein to incorporated cities and towns, as independent school districts, to levy the tax therein authorized, after complying with the conditions therein prescribed, is neither expressly nor impliedly prohibited by the constitution. Const., art. VII, sec. 1; art. XI, sec. 10; Willis v. Owen, 43 Tex., 61.

IV. When the result of an election has been duly ascertained, declared and acted on by the proper authorities, such election cannot be attacked for irregularities, nor the findings of the canvassers set aside, in a collateral proceeding. 3 Tex., 153; 6 Tex., 20; 20 Tex., 516; 42 Tex., 340; 45 Tex., 270; 56 Ala., 131.

*John Hanna* and *J. Y. Hogsett*, for appellees.

I. When a law is attacked on the ground of its constitutionality, there must appear a clear incompatibility between the law and the constitution, to authorize the court in holding the law unconstitutional. Legal Tender Cases, 12 Wall., 531; Southerland v. De Leon, 1 Tex., 250; Rhine v. City of McKinney, 53 Tex., 355.

II. Arts. 3785, 3786 and 3787 of the Revised Statutes are unconstitutional. Const., art. VII, sec. 3; art. VIII, secs. 3 and 9; art. XI, secs. 4 and 10; Burroughs on Tax., 380.

And hereunder appellees make the several following counter propositions:

1. The provision in the constitution, limiting the powers of taxation, applies to counties and towns. Art. VII, sec. 3, provides that not more than one-fourth of the general revenue of the state and one dollar poll tax shall be set aside for the benefit of public schools. Burroughs on Tax., 380.

2. Art. VIII, sec. 9, of the constitution limits cities and towns in levying taxes to one-half the state tax, and to a tax for past indebtedness and for public buildings, and as in the constitution is otherwise provided, and there is no other provision in the constitution that will authorize the tax provided for in arts. 3785, 3786 and 3787 of the Revised Statutes.

3. Cities and towns of ten thousand inhabitants or less can levy no tax except to defray the current expenses of the local government. Art. XI, sec. 4, expressly provides the purpose for which cities of under ten thousand inhabitants may levy and collect taxes, and does not provide or include a school tax. The inclusion of one purpose is the exclusion of all others.

4. The expression, "and when the citizens of any city or town have a charter," in art. II, sec. 10, Const., does not mean or allude to the charter under which the city or town is incorporated, but means a charter to citizens for an academy; and the expression, "institution of learning," in said section, meant an academy and not public free school. Act Incorporating New Braunfels Academy, passed February 5, 1858; Veto Message, House Journal, pp. 786, 787, first session 1879.

5. If the charter alluded to in art. II, sec. 10, of the constitution was the city charter, the city tax could not be levied legally in Fort Worth, because her charter did not provide for any such tax.

6. If the tax provided for in art. 3785, R. S., was authorized by art. II, sec. 10, Const., said article 3785 is in conflict with said section of the constitution, in providing that two-thirds of those voting should carry the election, instead of that two-thirds of the taxpayers should vote for the tax.

III. In the levy of every municipal tax, all necessary prerequisites and conditions precedent must be complied with and appear. And in a contest over the validity of the tax, everything necessary to its validity, including the manner of voting it, whether by the council or the citizens, may be inquired into. Dill. on Mun. Corp., secs. 204-6, 605, note 2, 610, 649, 655; Burr. on Tax., 372, 396-8, 400; Williams v. Davidson, 43 Tex., 33, 34.

Appellees make the further propositions in support of the judgment of the court below:

1. Sec. 55 of the act of August 19, 1876, concerning public schools, provides for the cities and towns taking exclusive control of public free schools within their limits, and not for erecting themselves into separate and independent school districts. At the election held by the city on the 28th of February, 1877, the question submitted was whether or not the city should take exclusive control of the public free schools within her limits.

2. An election ordered and held in only one ward of a city for the whole city, after it is divided into several wards, is illegal and void. The election held on the 28th of February, 1877, to determine whether or not the city would assume control of the public schools was held in only one place, which was in the first ward,

when the city had been previously divided into three wards. Acts 1875, sec. 6, p. 116; Acts 1876, p. 306, secs. 1, 14.

3. A municipal corporation has no power to levy and collect a tax, unless it is expressly given in the charter. Art. 3785, R. S., is no part of the charter of the city of Fort Worth, and the authority to levy the school tax is not to be found in the charter. Burr. on Tax., pp. 370–2; Dill. on Mun. Corp., secs. 55, 605.

4. The power to tax, when given a municipal corporation, must be strictly pursued or the tax will be invalid. The proposition submitted to the voters was to allow the city to levy one-fourth of one per cent. for the support of public schools. That provided for in art. 3785, R. S., was for an amount not exceeding one-half of one per cent., in addition to the fund received from the state, as shall be sufficient to run the schools ten months in the year. Allen v. Galveston, 51 Tex., 318; Burr. on Tax., p. 372; Dill. on Mun. Corp., sec. 610.

5. Arts. 3785, 3786 and 3787 are no part of the charter of the city of Fort Worth, and to so hold would make them unconstitutional under art. III, sec. 35, of the constitution. The charter and the school law were both adopted in the Revised Statutes by same act of the legislature, and said arts. 3785, 3786 and 3787 placed in the school law, not in the charter.

GOULD, CHIEF JUSTICE.— W. H. Davis and others, citizens of Fort Worth, brought this suit to enjoin the city and its tax collector from further proceedings to collect a tax of one-fourth of one per cent., levied for the year 1880 for the maintenance of public schools in said city during the year ending April 3, 1881. The material facts alleged and agreed on by the parties may be thus stated: In January, 1877, the city council of Fort Worth, a city of less than ten thousand inhabitants, acting under the general incorporation act, ordered an election for the purpose of determining whether or not said city should take control of the public free schools within her limits. At that time the statute on this subject empowered an incorporated city or town to take exclusive control of the public schools within its limits, "provided they determine so to do by a majority vote of the property tax-payers of said city or town." . . . Laws of 1876, p. 209. The election was held, the proposition was by the city council declared to be carried in the affirmative, and the city thereupon assumed control of the public schools. On March 2, 1880, the council ordered an election to be held on April 15, 1880, to determine whether or not they should be empowered to levy a tax of

one-fourth of one per cent. for the support of public free schools. This election was held, the result duly canvassed, and declared to be in favor of the proposition, and thereafter the tax of one-fourth of one per cent. was levied, being a tax in addition to the amount authorized by law for other purposes. At the time this election was held the following sections of the Revised Statutes were in force in regard to cities or towns which had exclusive control of the public free schools within their limits:

Art. 3785. If, at an election held for that purpose, at which none but property tax-payers, as shown by the last assessment rolls, who are qualified voters of such city or town, shall vote, two-thirds of those voting shall vote in favor thereof, such an amount shall be raised by taxation, not to exceed one-half of one per cent., in addition to the *pro rata* of the available school fund received from the state, as may be necessary to conduct the schools for ten months in the year.

Art. 3786. After a city or town has assumed control of the public free schools within its limits, as provided for in article 3781, the council or board of aldermen shall also submit the question to the property tax-payers, as to whether or not the additional amount, as provided for in the preceding article, shall be raised by taxation.

Art. 3787. If the vote of the tax-payers is in favor of the levy of said tax, then it shall be the duty of the council or board of aldermen, annually thereafter, to levy . . . such additional tax as may be necessary for the support of the schools for ten months in the year, not to exceed one-half of one per cent.

In the petition the constitutionality of art. 3785 quoted above was denied. So, also, the validity of the election in 1877 on the question of assuming control of the public schools was denied, and facts were stated in regard to the place where said election was held and the number of votes cast, compared with the number of legal voters in the city, by reason of which it was denied that the city had at that election assumed exclusive control of the public schools within its limits. The court refused to hear evidence for the purpose of re-investigating the question of the regularity of either of the elections held, or the correctness of the result of those elections as determined by the city council. The court, however, rendered judgment perpetuating the injunction, and in so doing is supposed to have proceeded on the ground of the unconstitutionality of the laws under which the city council acted.

On the part of appellee, it is claimed that the constitution limits the taxing power of cities and towns both as to the amount and

the purpose or object of the tax, and it is denied that the legislature have any power to authorize the levy of a tax for school purposes. The clauses of the constitution referred to are: Art. VIII, sec. 9. "The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars valuation, and no county, city or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year, and except as in this constitution is otherwise provided."

Art. XI, sec. 4. "Cities and towns having a population of ten thousand inhabitants or less may be chartered alone by general law. They may levy, assess and collect an annual tax to defray the current expenses of their local government, but such tax shall never exceed, for any one year, one-fourth of one per cent., and shall be collectible only in current money." . . .

In section 6 of the same article taxes "necessary to pay the interest and provide a sinking fund to satisfy any indebtedness heretofore legally made and undertaken" are authorized.

On behalf of the city, it is claimed that these clauses of the constitution have no application to taxation by school districts. That a city which has been constituted a separate and independent school district has two distinct organizations, one as a municipal corporation proper, the other as a school district; and that there is nothing in the constitution prohibiting the legislature from authorizing school districts to levy taxes for the support of public schools. In furtherance of this idea, sec. 1, art. VII, of the constitution is referred to, as follows: "A general diffusion of knowledge being essential to the liberties and rights of the people, it shall be the duty of the legislature of the state to establish and make suitable provision for the support and maintenance of an efficient system of public free schools." It is argued that this article impliedly gives the power to the legislature to direct the levy of such taxes as may be necessary in each school district to support an efficient system of free schools. But in our opinion the constitution, pervaded throughout as it is by a manifest purpose of limiting the taxing power of the legislature and of all the municipal or political subdivisions of the state, has clearly expressed that purpose in reference to taxation for public schools, leaving no room for any such implied authority as is claimed. In the article on education and public schools, the first section of which has just been cited, it directs "not more than one-fourth of the general revenue of the state, and a poll tax of one

dollar," to be set apart annually for the benefit of the public free schools. It defines the permanent available school funds thus: "The principal of all bonds and other funds, and the principal aris-ing from the sale of the lands hereinbefore set apart to said school fund, shall be the permanent school fund; and all the interest de-rivable therefrom, and the taxes herein authorized and levied, shall be the available school fund, which shall be applied annually to the support of the public free schools." Clearly the expression, "taxes herein authorized," negatives any other taxation for school purposes than that expressly authorized in the constitution. So the 9th sec-tion of the article on taxation carefully prescribes the limit to state, county and city taxation, except for the payment of debts then al-ready incurred, "and except as in this constitution is otherwise pro-vided." These repeated and guarded constitutional limitations of the taxing power are a prominent feature of that instrument, and are inconsistent with the existence of a legislative power to author-ize additional taxation by school districts, unless some affirmative grant of that power be found in the constitution itself. That power has been expressly granted in the constitution of 1869–70, art. 9, sec. 7. Taxation by school districts was familiar to the framers of the present constitution. It was the system generally prevailing in other states, by which the deficiencies of a general or state school fund were supplemented. The omission of a provision authorizing that system was plainly intentional, for, in addition to what has been said, the journals of the convention show that all propositions embracing that system were voted down. Our conclusion is that the city of Fort Worth, in its capacity as a school district, had no other power to levy taxes for the support of public schools than can be found expressly authorized in the constitution.

It is claimed that such express authority is found in sec. 10, art. XI, of the constitution, as follows: "The legislature may constitute any city or town a separate and independent school district. And when the citizens of any city or town have a charter authorizing the city authorities to levy and collect a tax for the support and maintenance of a public institution of learning, such tax may here-after be levied and collected, if, at an election held for that purpose, two-thirds of the tax-payers of such city or town shall vote for such tax."

The first clause of this section is plain and unambiguous. The system of public free schools required subdivisions of the state into school districts, and the legislature was authorized to constitute any city or town a separate and independent school district. There was

at the time amongst the statutes of the state, one authorizing incorporated cities " to assume control of the public schools within their limits," and when they did so, substantially making them independent school districts, with the power to levy a tax of not more than one-fourth of one per cent. to sustain such schools. Acts of 1875 (2d session 14th Leg.), p. 161. Does the second clause of this section confer a like power to tax, where towns and cities, under authority of their charters or former laws, had assumed control, or under this section might assume control, of the public free schools within their limits?

The construction given that clause by the first legislature that met under the constitution, and which has since then been followed by successive legislatures, is that .it does confer that power. Acts of 1876, p. 209, secs. 55, 56; R. S., arts. 3781 *et seq.;* Acts of 17th Leg. (1881), p. 64 and p. 114. These enactments have received the approval of the distinguished ex-judge and ex-chief justice of this court, who has also since filled the office of governor of this state, at the time of their passage, and they have been adopted and acted on by numerous towns and cities. If this be not the correct construction of this clause, we must be clearly satisfied to that effect, or we will not be justified in pronouncing the statutes based upon it to be unconstitutional and void. But if this be the true meaning of that section of the constitution, it cannot be denied that this meaning is most obscurely expressed. The public free schools of a town or city would not ordinarily be designated as " a public institution of learning." But perhaps this expression was used as one more comprehensive than public schools, and to embrace not only public schools, but institutions like the New Braunfels Academy, whose charter incorporated a few of the citizens of New Braunfels under that name, and empowered the corporate authorities of the city of New Braunfels to levy a special tax for the support of the institution. See act of February 5, 1858. Perhaps it was used with reference to the fact that at least one city in the state had a charter empowering it to incur a bonded debt of $100,000 " for educational purposes and none other." See Special Session of 1873, sec. 17 of Charter of Corsicana. It is reasonable to presume that the framers of the constitution .were aware of the charter of the New Braunfels Acadamy and of the city of Corsicana, and aware also that some cities in the state had assumed control of public schools, and were levying taxes for their support. To my mind, the most plausible construction is that the convention desired to leave undisturbed such town or city taxation for educational purposes as was then in force under charters, or under

the laws generally, including those towns and cities which had assumed control of public schools within their limits, and were levying, under the act of 1875, taxes for their support. The reading would be: And where towns have a charter authorizing their taxation for educational purposes, such tax may hereafter be levied, if two-thirds of the tax-payers of such town shall vote for such tax. The expression, "have a charter," indicates a charter then in existence, and is properly followed by the declaration that such a town may *hereafter* levy such tax. It must be admitted, however, that the use of the adverb "where" favors a different construction. Towns are authorized to become independent school districts.· "And where"— that is, and at the time that they may have assumed charge of the public schools within their limits, and thereby have made the support of public schools a proper town purpose, and taxation for that purpose (within the limits prescribed for towns), legitimate, may levy such tax, if, etc. It must be confessed that the true meaning of this section is involved in doubt; and because of that fact, we are justified in giving weight to the construction given it by the legislative and executive·departments. That construction is that, at whatever time an incorporated town may assume control of its public schools, it may thereafter levy a school tax, if two-thirds of its property taxpayers shall so vote. I am constrained to say that, in my opinion, this construction is unauthorized and wrong. But it is the opinion of the court that it cannot be said to be clearly wrong, and that the statutes authorizing town taxation for the support of public schools, upon a vote of two-thirds of the tax-payers of the town, cannot be said to be clearly unconstitutional and void. Having given the subject careful examination, and being still in doubt, the opinion of the court is that the statutes in question must be held valid.

It is claimed for appellee that article 3785 of the Revised Statutes is unconstitutional, in that it allows a vote of two-thirds of the taxpayers voting to authorize the tax, whereas it is said the constitution requires an affirmative vote of two-thirds of all the tax-payers of the town who are qualified voters. Our opinion is that the constitution does require such an affirmative vote. The language is: "If . . . two-thirds of the tax-payers of such city or town shall vote for such tax." In the case of the County of Cass v. Johnston, 95 U. S., 365, the constitutional requirement was that "two-thirds of the qualified voters of the . . town, at a regular or special election to be held therein, shall assent thereto." The majority of the court held that, "in the absence of any statutory regulation to the contrary," voters absenting themselves "are presumed to assent to the

express will of a majority of those voting," and upheld as valid a statute which only required two-thirds of the township voting at an election called for that purpose, to vote in favor of the proposition. As we understand it, the opinion of the court construes the expression, "shall assent thereto," as consistent with the idea that voters might assent thereto by abstaining from voting. Our constitution precludes such implied assent, for it requires that two-thirds "shall vote therefor."

But the constitution prescribes no means of ascertaining the number of tax-paying qualified voters in the city. The duty of doing this, and the consequent right of selecting such means and mode of doing it as they may deem best, having reference to practicability and convenience, must devolve on the legislature. This is the express provision of the constitution in the section authorizing counties and cities on the coast to levy a tax for the construction of sea-walls and breakwaters, "upon a vote of two-thirds of the tax-payers therein (to be ascertained as may be provided by law"). Art. XI, sec. 7. From the necessity of the case, a like provision must be implied in the clause we are considering. A reference to the last assessment roll would obviously be open to objection as inaccurate. Some who were tax-payers when the roll was made may have died or removed, or ceased to be tax-payers. Other tax-payers may have moved in, or have been casually omitted. Absolute accuracy in ascertaining the number of property tax-payers who were also qualified voters is manifestly not obtainable. The legislature have assumed that on a question of taxation, affecting his purse, every tax-payer would be desirous of voting, and that the best test of the number of tax-paying voters on the day of the election is the number of votes cast. Practically this may prove a bad test. So may any other that can be suggested. The legislature have adopted this as under all the circumstances the best test, and there are numerous cases which seem to support their authority to do so. See County of Cass v. Johnston, *supra;* St. Joseph Township v. Rogers, 16 Wall., 644; 1 Sneed, 638–691; Taylor v. Taylor, 10 Minn., 107; State v. Mayor of St. Joseph, 37 Mo., 270; Anderson Co. v. H. & G. N. R. R., 52 Tex., 239.

The question is one of importance, and as we have not found it necessary to do so, it is not intended to pass upon it. Whatever our opinion as to the unconstitutionality of that part of the statute which we have been considering, it would not follow that the election was invalid. County of Anderson v. H. & G. N. R. R., 52 Tex., *supra.* Rejecting that part of the statute claimed to be unconstitutional,

there would still remain authority for holding an election, and of the result of that election the city council were the judges. They having judicially determined the result of that election, and no contest or direct proceeding having been instituted to set aside that judgment, it is not subject to collateral attack. Questions of that nature may be submitted by the political authority to such tribunals as the city council, with or without the right of appeal to, or contest before, some other tribunal. The proper tribunal having decided that two-thirds of the property tax-payers of the city had voted for the tax, and no revision of that determination having been sought, or had, that question is finally settled.

It may most appropriately be asked how, under the decisions of this court, can a tax-payer contest the result of an election, or obtain a revision of the action of the tribunal entrusted by law with the determination of that result. *Ex parte* Towles, 48 Tex., 413; Williamson *v.* Lane, 52 Tex., 336. Referring to my dissenting opinions in those cases, I am authorized to say for the court, and each member of the court, that, notwithstanding those decisions, we regard the question of the validity of the various provisions in the Revised Statutes for contesting elections as still an open question in this court. If, indeed, elections cannot be contested in the mode provided by the legislature, and if the citizen is left in many cases powerless to institute such a contest, or at least uncertain how and before what tribunal to do so, the rights and interests involved are so vital, and the danger of gross and irremediable wrong so great, that this court may with propriety re-examine its decisions, supposed to lead to such results.

It may be noted in regard to the vote of the tax-payers of a town on the question of a school tax, the law now makes provision for a subsequent vote on the question "whether the tax shall be continued or discontinued." Acts of 17th Leg., p. 64.

One other question remains. The question authorized by the statute then in force to be submitted was: "Shall such an amount be raised by taxation, not to exceed one-half of one per cent., in addition to the *pro rata* of the school fund received from the state, as may be necessary to conduct the schools for ten months in the year." R. S., art. 3785. Subsequent legislation has changed this question, and authorized a vote on a tax for a specific per cent. This change of the statute, however, does not affect the validity of actions had before the change took effect.

The question actually submitted was, "Whether or not the city council of said city should be allowed to levy a tax of one-fourth of one

per cent. for the support of public free schools within said city." These questions are not the same. The maximum prescribed by the law was one-half of one per cent. The vote was on a tax of one-fourth. The law said that the vote shall be on a tax of such an amount, not to exceed one-half per cent., "as may be necessary to conduct the schools for ten months in the year." The question submitted did not specify for what time the public schools were to be supported. The importance of this difference is apparent by referring to art. 3787, R. S. "If the vote of the tax-payers is in favor of the levy of said tax, then it shall be the duty of the council or board of aldermen, annually thereafter, to levy  .  .  .  such additional tax as may be necessary for the support of the schools for ten months in the year, not to exceed one-half of one per cent." Clearly the statute then contemplated but one vote, and if that were in favor of the levy, then it required the city council to levy annually enough to support the schools for ten months. It is equally clear that if the one-fourth of one per cent. voted by the city of Fort Worth were not enough to support the schools for ten months, that no greater amount could be levied without another vote. The vote may have been in favor of the levy, and yet the city council may have been powerless to levy a tax sufficient to support the schools for ten months. There can be no question but that the constitution, by giving the legislature authority to establish an efficient system of public schools, conferred on it ample power to regulate the details of that system, including the precise question to be submitted to vote, and the number of months the schools must be carried on. There can be but little question but that the council, in a matter affecting their power to tax, must pursue with strictness the mode prescribed by the legislature. "In the execution of the power to tax, municipalities must confine themselves closely within the power conferred." Cooley on Taxation, p. 257. "If the mode in which the authority shall be exercised is prescribed, that mode must be pursued." 2 Dillon on Mun. Corp., sec. 769 [610]. "And where the power to tax is omitted, it must be strictly pursued, and all the conditions precedent and subsequent must be fulfilled in the exercise of the power." Burroughs on Taxation, p. 372. A material departure, both in the form and substance of the questions submitted from that authorized, is fatal to the tax. It matters not that possibly one-fourth of one per cent. was sufficient to support the schools for ten months in the year. If that amount, at any time, proved insufficient, an additional tax in excess of the one voted would have been necessary, and the statute then contemplated but one vote. Nor is it any answer to say

that the citizens were perhaps willing to pay a tax of one-fourth of one per cent. only, and that one-fourth of one per cent. would only support the schools for six or seven months in the year. The legislative will, as then in force and plainly expressed, was that if the city voted for the tax in the terms required, then the schools were to be carried on ten months out of the year, if the one-half of one per cent. sufficed for that purpose. Whether this provision was wise and proper is not a question for the courts. Although superseded by subsequent legislation, it was then the law, and it was beyond the power of the city council, in submitting the question to the citizens, to do otherwise than to follow the directions of the law.

In our opinion the city of Fort Worth had no power to levy a tax for the support of public schools in the city, because the proper question was not submitted to the property tax-payers and voters of the city.

The tax levied was illegal, and the judgment of the court below, enjoining its collection, is affirmed.

                                        AFFIRMED.

[Opinion rendered June 6, 1882.]