ROBINSON & WATSON ET AL. v. W. J. WINGATE,
COUNTY JUDGE, ET AL.

Decided May 10, 1904.

**1.—Liquor Dealer—Prohibition—Election Contest—Publishing Result—Injunction.**

Injunction can not be maintained to prevent the commissioners court from canvassing the returns and publishing the result of an election for prohibition of the traffic in intoxicating liquors under the local option law, either upon grounds rendering such election void, or such as would avail to set it aside upon contest filed under the statutes regulating contested elections.

**2.—Same—Contest Under Statute.**

Elections are under the control of the political power of the State, and the proceeding provided by the statutes (Rev. Stats., art. 3397; Act of April 16, 1895) for contesting their results is neither a civil suit nor a criminal action, maintainable under the general law or equity jurisdiction of the courts, but a political proceeding committed by the Legislature to the court as a special tribunal, which can not exercise such powers by a suit for injunction; nor could it in an injunction suit maintained under its general jurisdiction apply the remedies provided for the case of a statutory contest.

**3.—Same—Protection of Private Rights.**

Contestants appealing to the court merely for the protection of their private rights as licensed liquor dealers, if entitled to maintain injunction on the ground that they were threatened with numerous unwarranted criminal prosecutions, should proceed against the officers charged with the enforcement of the law, not against those to whom was committed the mere duty of determining and announcing the result of the election.

**4.—Same—Void Election.**

As to matters making the law void, as distinguished from those furnishing ground for statutory contest, the remedy by injunction against declaring the result of the election is too drastic to be invoked by an individual for the protection of his private rights, which are amply protected by the law without resorting to such procedure.

Appeal from the District Court of Orange. Tried below before Hon. W. P. Wicks.

*Hall & Holland* and *Chester, Crawford & Chester,* for appellant.

*Robertson & Bruce, Hart & Sholars, Adams & Huggins,* and *Geo. F. Poole,* for appellee.

GILL, ASSOCIATE JUSTICE.—This action was brought by appellants as retail liquor dealers and qualified voters in Orange County against W. J. Wingate, judge, and the several members of the commissioners court to cancel and annul a local option election held in Orange County in May, 1903, and to enjoin them from canvassing the election returns and publishing the result.

On May 31, 1903, the petition was presented to the judge of an adjoining district, who granted the preliminary injunction as prayed for and ordered that it remain in force until the litigation was finally determined.

Defendants presented general demurrers and special exceptions to the petition, the latter among other things questioning the sufficiency of

the pleadings on the ground that the allegations were too general, vague and indefinite.

At the October term of the District Court of Orange County the demurrers were heard, the general demurrer sustained, and plaintiff granted leave to file a trial amendment. Thereupon C. A. Turner, another retail liquor dealer in that county, by leave of the court, intervened, adopting the allegations of the plaintiffs and alleging further that he was not a qualified voter. On motion of the defendants the intervention was stricken out.

Plaintiffs then filed their trial amendment to which, in connection with the original petition, the demurrers were renewed and the general demurrer was sustained.

Plaintiffs' request to further amend was refused and the bill dismissed. Plaintiffs and interveners have appealed.

A brief statement of the substance of the pleadings will be sufficient for the purpose of this opinion. The firm of Robinson & Watson and their coplaintiffs alleged that they were lawfully licensed retail liquor dealers in Orange County and qualified voters therein. That they had invested in such business considerable capital, the value of which would be greatly lessened if the sale of liquor should be prohibited in that county. That pursuant to an order of the commissioners court an election was held in Orange County on May 20, 1903, to determine whether the sale of intoxicating liquors should be prohibited in that county under the terms of the local option law. That the defendants, the county judge and commissioners court, are about to canvass the returns and publish the result, which if permitted to be done will work irreparable injury to their capital and business to prevent which they have no adequate remedy at law.

They allege that the election was a nullity, (1) because the commissioners did not adjudge that it was expedient to call such election but ordered it solely because a petition purporting to be signed by 250 qualified voters, as required by the statute, was presented to them requesting such action on their part. That as a matter of fact not all the 250 signers were qualified voters, and the representation that they were such was a fraud upon the commissioners but for which such election would not have been ordered. (2) Because at many of the voting boxes the election was held and conducted by judges and clerks who were not at the time qualified voters in Orange County and qualified to serve in such capacity.

They allege that the election was unfairly conducted, (1) because on the day of the election religious services were held in many of the churches of the town of Orange. That ministers of the gospel, married women and little girls were, by a preconceived arrangement among the partisans of prohibition, engaged in ringing the church bells, holding prayer meetings, parading the streets, singing songs, in gathering about the polling places, in talking and singing with insistence to the different voters who presented themselves for the purpose of voting.

That the said ladies and misses obstructed the way and detained the voters and employed songs and music and a great many arguments which were the result of overwhelming zeal and a pronounced desire to destroy the business of the plaintiffs. That these practices had the effect of and did deter a great many men who were opposed to prohibition from voting and kept them away from the polls.

(2) That a great many voters who had paid their State and county poll tax were denied the right to vote because they had not also paid their city poll tax. Of these there were more than fifty who would have voted against prohibition and which number would have been sufficient to change the result.

(3) That the officers holding the election did, at various voting boxes during the progress of the ballot, engage in counting the votes and announcing the result from time to time to the partisans of prohibition.

(4) That one C. W. Carroll, a citizen of an adjoining county and a man of immense wealth, did during the progress of the campaign agree and promise to pay and make good any deficit in the amount of the taxes received for the ensuing two years which might be due to the adoption and enforcement of prohibition. That this offer was printed in the form of handbills and distributed generally to the voters of the county, was the subject of newspaper comment, and influenced many voters to cast their ballots for prohibition who would not have otherwise done so.

(5) They say on information and belief that many voters who would have voted against prohibition and the sum of whose votes would have changed the result, were accused of swearing falsely and threatened with arrest, and thereby deterred from casting their ballots.

(6) That many voters were allowed to vote for prohibition who had lost or mislaid their poll tax receipts, and this without requiring them to make the required affidavits of such loss, and that of these there were enough in number of change the result.

In alleging that of those who signed the application to the commissioners court less than 250 were qualified voters, not one is named or otherwise designated. Of those alleged to have been excluded on the ground that they had not paid their city poll tax not one is named nor is it shown at what voting box it occurred. It is not alleged at what voting boxes the status of the ballot was prematurely announced, or what officers were guilty of the misconduct complained of. Nor are the allegations any more definite as to the electors permitted to vote without making affidavit of the loss of their poll tax receipts.

The entire petition is quite as vague and indefinite as is indicated by the above statement of its substance.

The so-called trial amendment was in effect an amended original petition, as it was a restatement in its entirety of plaintiffs' cause of action. It did not in any respect add to its definiteness in the respects above mentioned or otherwise, except that one voter is named

,as having been influenced to vote for prohibition by the offer of
Carroll.

In this pleading, however, the further objection was made to the
voters' petition to the commissioners court that it was not all one
petition, but consisted of four petitions attached together though they
had been signed separately. It was alleged in addition to the grounds
set up in the first pleading that the clerk failed to post the five notices
of the order as required by law and that no return was made showing
that such notices had been posted at all.

Further, that the order was made at a special session of the com-
missioners court and that one of the commissioners was not notified of
the meeting. It is not averred that all of the commissioners were
not in fact present.

Further, that the special session of the commissioners was convened
and adjourned on April 20, 1903, but the proceedings were not recorded
during the term or read over and signed by the county judge, nor was
the same attested by the clerk as required by law, and no notice was
given as required by law of such proceedings.

As an additional ground for injunction it is averred that the peti-
tioners fear they will be harassed by arrests and criminal prosecutions
if the result is permitted to be announced.

The general purpose of the suit was to prevent the operation of the
law in Orange County; to forestall criminal prosecutions thereunder.
To secure this result plaintiffs have sought to combine two actions dis-
tinct from each other in their nature and to bring to the aid of both
the court's power to enjoin.

In assailing the validity of the order of the commissioners court,
under which the election was held, matters are set up which would be
available as a defense in criminal prosecutions instituted for the en-
forcement of the law. These matters go to the validity of the election
as distinguished from its fairness and if established render the entire
proceeding null and void.

The other phase of the case is clearly an effort to contest the election
in a mode other than that prescribed by the statute.

Appellees contend that the district court is without power to enjoin
the publication of the result, and if the contention is sound we need
inquire no further.

We think it can be safely said that the court is without power to
grant the writ on the grounds cognizable in an election contest. There
are many considerations which tend to support this conclusion.

Before provision was made by the Legislature for the contest of
elections no proceeding looking to that end could be brought by one
having only the interest of a citizen and voter, if indeed an election
could be contested at all except by quo warranto or by suit to contest
the right to an office. Each of these actions was held to have all the
essential elements of a civil suit and was addressed to the general
jurisdiction of the courts, whereas the mere contest of an election in-

volving the adoption of a law, a policy, or a form of local government was held to be lacking in these elements. Ex parte Towles, 48 Texas, 413; Williamson v. Lane, 52 Texas, 335; Ex parte Whitlow, 59 Texas, 273; State v. De Gress, 53 Texas, 387.

In City of Fort Worth v. Davis, 57 Texas, 225, it was intimated that in the absence of the statute authorizing the contest of elections (which had theretofore been held to be inoperative) a citizen would be without relief against a tax voted and imposed by an election unfairly held. In view of the evil consequences which might grow out of such a situation the court reserved the right to review its former decisions touching the validity of the contested election law and declared it to be an open question. The previous decisions, however, were subsequently sustained. Ex parte Whitlow, supra; Gibson v. Templeton, 62 Texas, 556. This latter case and Jennett v. Owens, 63 Texas, 264, make the distinction between the contest for office and a contest such as the one under consideration.

We mention Davis' case, supra, as indicating the trend of the court's opinion at that time.

It had been held by our Supreme Court before that and has been held since, and indeed it is the consensus of opinion, that elections are under the control of the political branch of our government. That the Legislature has seen fit to intrust to certain special tribunals their holding, the canvassing of the returns and the declarations of the result. That having done these things the courts have under their general powers no authority to review the action of the special tribunals thus constituted. High on Injunc., sec. 1245.

When the Legislature undertook to provide for the contest of elections the courts in construing the statute uniformly held that the action was neither a civil suit nor a criminal action, but was a political proceeding cognizable by the district court only because it was named as a special tribunal for its trial, and the laws prior to the adoption of the constitutional amendment conferring jurisdiction on the district court were held unconstitutional for want of power in the Legislature to confer jurisdiction.

The law of 1893 was held to be inoperative because the Legislature had failed to provide rules of procedure for the trial, the constitutional provision being held not self-executing. Odell v. Wharton, 87 Texas, 173.

The point to be borne in mind here is that the proceeding lacked the necessary elements of a suit and therefore did not come within either the law or equity jurisdiction of any of our courts. Under the present law, passed in view of the constitutional amendment, rules of procedure are provided and the proceedings are cognizable in the district courts. But it does not follow that the proceedings have lost their distinctive character as political proceedings rather than suits.

The amendment to the Constitution having been adopted to supply the want of a judicial tribunal in which such controversies might be

heard, and having been prepared and adopted in view of the decisions in which the proceeding had been classified, the term must be held to have been used according to its accepted and adjudicated meaning.

The action retains its nature as first defined. It may be brought in cases where neither an office nor its value is in issue. The plaintiff need have no greater interest than that of any other voter. The defendant may be a mere nominal party without interest and without concern as to the result. Thus the proceeding may be conducted without subject matter and without parties at interest in the sense of the usual meaning of those terms.

That it has thus retained its distinctive character notwithstanding the constitutional amendment is settled by our Supreme Court in Norman v. Thompson, 96 Texas, 250, 72 S. W. Rep., 62, in which it was held that in an election contest nothing was at issue save matters affecting the fairness of the result as distinguished from matters affecting its validity. It was held to have retained its nature as a special proceeding, and Wright v. Fawcett, 42 Texas, 206, and Rogers v. Johns, 42 Texas, 340, were cited with approval.

This doctrine was declared in a local option contest in which the matters thus excluded were sought to be determined in that controversy.

It has been definitely settled that injunction will not be granted in aid of the plaintiff in a contest for office. McAllen v. Rhodes, 65 Texas, 348.

We think it follows logically and inevitably that a suit to contest the result of local option elections must be brought under the statute, and that a suit of this nature addressed to the general jurisdiction of the district court can not be heard.

There are considerations of public policy which strengthen this conclusion. The absolute necessity for the speedy determination of such controversies has long been recognized. To this end the statute provides that the action must be instituted within thirty days and a prescribed character of service had. The answer must be filed within ten days. The parties are denied a jury and the cause has the right of way over all other pending litigation. Writ of error will not lie as in civil cases. The judgment can be reversed only by appeal. Buckler v. Turbeville, 17 Texas Civ. App., 120. If the contest can be made independent of the statute and a plaintiff can call into action the general equity powers of the courts, contests can be made at any time within the general statutes of limitation, the operation of the law indefinitely arrested, and all the provisions of the statute looking to the speedy termination of the litigation evaded and set at naught.

Justice Walker in Dickey's case, 78 Ill., 261, after holding the statutory action exclusive and denying the right to injunction, uses the following apt and forceful language: "If the court may exercise this jurisdiction in cases of doubt or even where there is no doubt of the result, a few contentious and not overscrupulous persons might be in-

duced, from the heat and strife always engendered in such elections, to resort to a bill and an injunction, and thus for years thwart the will of the people which the general assembly has made absolute in adopting or rejecting this charter for their government. Public policy does not require such a jurisdiction even if it could sanction it. If the power were admitted where would the jurisdiction end? Suppose a person were to conceive a law to have been unconstitutionally enacted, could he by bill restrain the governor and all other persons from executing it until a hearing could be had and the law declared valid? * * *" The learned justice adds many other instances illustrating the absurd and dangerous consequences which might follow the exercise of such a power within its logical limits.

To the same effect is Peck v. Waddell, 17 Ohio, 271; Bynum's case, 101 N. C., 412; Garrigue's case, 28 Pa. St., 9; Moulton v. Reed, 52 Ala., 320.

No better illustration of the vice of such a doctrine is needed than the case at bar. Without reflecting upon the motives of plaintiffs, the fact remains, that, upon allegations marked by a vagueness and indefiniteness bordering closely on what are termed "fishing allegations," sustained by an injunction bond upon which there can be only a nominal liability, the plaintiffs have been enabled to suspend for nearly a year the result of an election which upon the face of the returns is confessedly in favor of prohibition within the territory described. If the power to issue the writ exists and the case is well pleaded, the judgment must be reversed and the cause remanded to drag its tardy course through the courts and perhaps reach the appellate courts again with the law still in suspension, and this regardless of whether there exists an atom of proof to sustain the allegations. A supersedeas bond involving only a nominal liability will suspend another judgment as it suspended the last. The wisdom and expediency of prohibition is a political question about which there is much honest difference of opinion, but the right to vote upon the issue and to enforce the result is not an open question.

In addition to all this it is plain that the maintenance of the action in its present form would be further subversive of the declared legislative will. The statute authorizing a contest prescribes the nature of the judgment to be rendered.

If it shall be made to appear that the election would have resulted differently but for the practices complained of, such result shall be declared. If it is shown that the result is a tie or can not be ascertained with reasonable certainty or that improper influences have been exercised so general in their nature as to preclude the ascertainment of their exact effect, the judgment shall so declare and the election officers commanded to hold another election. It is manifest that no court in the exercise of its general powers independent of the statute could render and enforce such a judgment. So, in this case, if the plaintiffs should prevail on the uncertainty of the result, the defendants or that

part of the electorate they theoretically represent would be deprived of this privilege and would be driven to an original proceeding to secure resubmisssion of the question to the voters.

But appellants contend that these considerations. can not prevail over private property rights which are averred to be threatened with destruction. The proposition is advanced that as plaintiffs have not sued in a representative capacity but for the protection of their own holdings, the case invokes the application of the general principles of equity.

It occurs to us that this aspect of the case furnishes but another reason in support of our conclusion. For the enforcement of an individual and private right plaintiffs seek to perpetually suspend the operation of the law as to all men. This is sought to be accomplished in a suit in which, if plaintiffs fail, the judgment will not conclude others. Other liquor dealers threatened with like injury may institute a like proceeding. A series of such suits might altogether deprive the victors of the rights accorded them by law. But this last contention may be answered upon another ground. The local option law may be enforced only by criminal prosecutions. Its effect on property rights is merely incidental. It is generally true that courts of equity will not enjoin officers charged with the conduct of criminal prosecution on the ground that the law they seek to enforce is void. High on Injunc., secs. 5, 68, 124, 157. In Hading v. Commissioners, 3 Texas Ct. Rep., 162, Justice Key intimates that if the plaintiff in a proceeding of this sort should aver that the local option law is void, that he is threatened with many unlawful prosecutions, and is unable to give bond, equity might aid him. But the learned justice expressly declared that no citizen was otherwise entitled to an injunction to restrain criminal prosecution. The right to an injunction restraining the publication of the result was denied. If a citizen could in any case restrain by injunction the enforcement of a void criminal law it would certainly be necessary on principle to direct his action against those charged with its enforcement, and the defendants in this case have nothing to do with prosecutions. The measure of their duty in the premises is to perform the ministerial acts of canvassing the returns and publishing the result, and this duty the statute imposes in unequivocal terms.

In disposing of the phase of this case involving the contest of the election we have not been controlled by the general rule that injunctions will be denied where the complainant has an adequate remedy at law. In this State the right to the writ is enlarged by statute to an extent not yet clearly defined by the courts. Summer v. Crawford, 91 Texas, 132; Rev. Stats., art. 2989. We base our conclusion upon the proposition that an election of this kind can be contested in a proceeding brought under the statute and not otherwise.

The attitude of a retail liquor dealer with respect to the enforcement of local option is not materially different from that of any other citizen of the territory. It denies him the right to further con-

duct his business, but it denies equally to all others the right theretofore existent to engage in such an enterprise. The power to dispose of his property is not taken away except within the territory included within the prohibitory law. In a sense it acts upon all alike, hence his allegations do not take him out of the general class.

We have discussed the contest feature of this case thus fully because much that has been said upon the point applies with equal force to the broader questions of the right to enjoin the publication of the result on the ground of the invalidity of the order under which the election was held and other grounds which, if established, would render the attempted adoption of local option an absolute nullity.

We are of opinion that for reasons equally cogent the writ will not lie upon these grounds.

In the first place Justice Walker's powerful reasoning in Dickey's case, supra, applies with equal force to this feature of the case at hand. It is further apparent that in this respect also an injunction restraining the publication of the result is too drastic and far reaching to be granted to an individual in the protection of his private rights. If Justice Key's opinion, supra, is sound, equity may rightly interfere at a later stage of the proceeding in a suit to restrain the county attorney from instituting causeless prosecutions under a void law. Under the statute enlarging the power to issue the writ of injunction we are not prepared to hold that in such a case the writ would not lie notwithstanding the established equity rule to the contrary.

If in addition to the right to interpose the invalidity of the law as a defense to criminal prosecutions thereunder the above named remedy may be resorted to, it becomes clear that every consideration of reason and public policy is in favor of a denial of the right to restrain by injunction the publication of the result. The publication will not render the law valid if it be otherwise invalid, and so the remedy against the prosecuting officers is in no way restricted by the denial of this writ. In such event the private rights of the complainant are fully protected until the validity of the law is adjudicated, and in the meantime the officers may proceed with the general enforcement of the law.

In Hill v. Roach, 26 Texas Civ. App., 75, 62 S. W. Rep., 959, the court seems to have proceeded upon the theory that the writ might be granted in a proper case but should not be awarded to prevent the publication of the result, for the reason that no injury to complainant could follow therefrom. The holding is dictum but is not without force. If the election is in fact a nullity the prosecuting officers may conclude not to undertake the enforcement of the law. To say the least it is premature to grant an injunction against the commissioners court on the ground that their general act in promulgating the void result will impel others to use it to the detriment of a private interest. Ordinarily equity would require the showing of a danger more imminent and threatening than is here made to appear.

In McDaniel v. State, 32 Texas Crim. Rep., 16, Justice Simkins expressed the opinion that the writ would not lie to restrain the publication of the result. The expression is referred to with approval in Ex parte Mayes, 39 Texas Crim. Rep., 36. Norton v. Alexander, 4 Texas Ct. Rep., 722, is to the same effect.

Hading's case, supra, is very much in point. The common law authorities are almost unanimous upon the point, on the ground that it is an unwarranted interference on the part of the court with the political branch of the government, and that the question of the validity of the law can reach the courts only when its enforcement is undertaken and resisted as distinguished from its passage and publication.

The distinction is illustrated in that class of cases of which Fort Worth v. Davis, supra, is representative. In that case the city had sought by a vote to impose a school tax. It was sought after the result had been declared to contest the fairness of the election as well as its validity. The right to urge the first ground was denied, but the writ was allowed to restrain the collection of the tax on the ground that the election as held was a nullity.

Such cases are in no sense authority for the proposition that the writ will lie to prevent the holding of the election, or the canvassing of the returns, or the declaration and publication of the result. The right to the writ even in tax cases seems to arise only when the property of complainant is touched or immediately threatened by an attempt to collect the tax.

We have discussed the question thus at length because we infer from the frequency with which this remedy has been sought and obtained in our trial courts that a large portion of the bar and many of the trial judges believe the relief may be properly allowed and that the complainant need not await the attempted enforcement of the law. The question was the subject of a paper read before the last State Bar Association by the Hon. C. F. Greenwood, of the Hillsboro bar, from which we have received material aid in the investigation of the question. So far as we know the question has not been directly passed upon by our Supreme Court.

On whatever side the weight of authority may be held to lie we can not bring ourselves to believe that the right of the inhabitants of the political subdivisions of our State to adopt or reject prohibition or to annul it where already in force, or to adopt forms of local or municipal government by vote, has been left to the mercy of litigants. We believe the means are ample to protect the individual from a probably invalid law, and that this end can be conserved without resorting to a general suspension of the law before its validity can be determined upon the facts.

We are of opinion both the bill and intervention were bad on general demurrer. The judgment of the trial court is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

GILL, ASSOCIATE JUSTICE.—Appellants insist that our conclusion is in conflict with the opinion of the Supreme Court in Harding v. Commissioners, 95 Texas, 174, 66 S. W. Rep., 44. On the original hearing our attention was not called to the fact that the court had delivered a written opinion in refusing the writ in that case. We find the court expressly reserved the question, stating that it was one of great difficulty. The writ was refused upon another ground. There is therefore no conflict, nor can we see upon what ground our conclusion conflicts with the cases of Lowery v. Briggs, 73 S. W. Rep., 1062, or Norman v. Thompson, 96 Texas, 250, 72 S. W. Rep., 62, cited in the main opinion, as contended by appellant. It is unnecessary to discuss those cases. We are still unable to perceive why, if our statute enlarges the right to injunction, a court of equity should stickle at granting the relief against prosecuting officers seeking to enforce by prosecution a void law and yet go behind the prosecutions and enjoin the enactment of the law itself. We still believe that if equity should interfere at all it would be at a point nearer the threatened injury and against those charged with the duty of enforcing the law if valid.

The motion is overruled.

*Overruled.*

Filed May 27, 1904.

Writ of error refused.