E. B. GARESS v. W. S. FLY, CHIEF JUSTICE, ET AL.

Motion No. 6357. Decided December 3, 1924.

(266 S. W., 779).

1.—Conflicting Decisions—Jurisdiction of Supreme Court—Certifying Question—Mandamus.

The conflict of decisions which will justify mandamus requiring the question to be certified must be, not merely in the principles announced, but so far upon the same facts that the decision in one case is necessarily conclusive of the decision in the other. Garitty v. Rainey, 112 Texas, 369, followed. (Pp. 234, 235).

**2.—Same—Cases Distinguished.**

The ruling of the Court of Civil Appeals in Garess v. Tobin, 261 S. W., 430, contesting an election for issuance of city bonds, was based on the pleading, which did not allege that persons not tax-payers were permitted to vote, but that persons not shown by the tax rolls to be so qualified were permitted to vote without ascertaining their qualifications as tax-payers in the manner provided by the charter where they did not so appear from the tax rolls. This ruling did not present such conflict with that in City of Bonham v. Fuchs, 228 S. W., 1112, or in City of Ft. Worth v. Davis, 57 Texas, 225, as to require the question to be certified. The cases are distinguished and leave to file petition for mandamus refused. (Pp. 235-240).

Motion by Garess for leave to file petition in the Supreme Court for writ of mandamus to require the Court of Civil Appeals for the Fourth District to certify questions arising on conflict of its decision in Garess v. Tobin, 261 S. W., 430, with rulings in other cases.

*Lewright & Lewright,* for relator:

*Joseph Ryan,* for respondents.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is before us on application for leave to file a petition for mandamus against the Justices of the Court of Civil Appeals for the Fourth District, at San Antonio. It involves the validity of an election by which the City of San Antonio was allowed to issue a large amount of bonds for municipal purposes.

The object of this proceeding is to obtain an order requiring the Court of Civil Appeals at San Antonio to certify certain questions to this Court, on the ground that the opinion of the Court of Civil Appeals, reported in 261 S. W., 430, is in conflict with the cases of Bonham v. Fuchs, 228 S. W., 1112, decided by the Court of Civil Appeals at Galveston, and City of Fort Worth v. Davis, 57 Texas, 225. We have examined these cases, and there is no such conflict as gives this Court jurisdiction.

In the case of Garitty v. Rainey, 112 Texas, 369, 374, 247 S. W., 825, 827, we stated the rule as to conflicts which require certification as follows:

"The conflict in decisions of Courts of Civil Appeals which will authorize this Court to issue a writ of mandamus and require certification must be upon a question of law involved and determined, and such that one decision would overrule the other if both were rendered by the same court. The conflict must be well defined. An apparent inconsistency in the principles announced, or in the application of recognized principles, is not sufficient. The rulings must be so far upon the same state of facts that the decision of one case is

necessarily conclusive of the decision in the other. In other words, the rulings alleged to be in conflict must be upon the same question, and unless this is so there can be no conflict. Coultress v. City of San Antonio, 108 Texas, 150, 179 S. W., 515; McKay v. Conner, 101 Texas, 313, 107 S. W., 45.''

The case of Bonham vs. Fuchs was a contested election case, in which a general demurrer had been sustained to the plaintiffs' petition. The plaintiffs declining to amend, the suit was dismissed. The Court of Civil Appeals at Galveston reversed and remanded the case, holding that the dismissal was not warranted by the pleadings and law applicable to it. In stating the facts of the case the Court of Civil Appeals in part said:

''One of the grounds upon which this result is contested is that 63 of the voters at the election whose votes were received and counted in favor of abolishing the corporation—

'''Were not qualified or entitled, under the laws of the state of Texas, to vote at said election, as the last assessment roll of said city of West Houston before said election, being for 1919, does not show them to be, and none of them are, listed as resident property taxpayers in said city of West Houston, where such election was held, and none of said voters paid a tax on property in said city for the year 1919, and do not pay tax on property therein, and are not taxpayers, and were not taxpayers when said election was held, but their votes were cast and counted at said election.' ''

\*  \*  \*  \*  \*  \*  \*

''It is not entirely clear from the conclusions of the trial judge before quoted that he intended to hold that the portion of the statute restricting the right of suffrage to taxpayers was void, but only that portion denying the right of a taxpayer to vote unless his name appeared upon the assessment roll. If this was the holding, the general demurrer should not have been sustained, because the provision requiring the voter's name to appear on the assessment roll was not such an integral part of the statute that its invalidity would destroy the entire statute, and plaintiffs' petition not only alleges that the names of the challenged voters did not appear upon the roll, but that none of them pay taxes on property within the city, 'and are not taxpayers, and were not taxpayers when said election was held.' ''

It is thus seen from the opinion of the Court of Civil Appeals in that case that the petition to which a general demurrer had been sustained by the trial court not only alleged that the names of the voters were not contained on the last assessment roll of the city involved, and were not listed as resident property taxpayers, but that none of the voters paid a tax on property in the city for the previous year, and that they do not pay taxes on property therein. and *''are*

*not taxpayers, and were not taxpayers when said election was held.*"
Manifestly, regardless of the validity of the statute there involved a
constitutional disqualification was alleged, and the general demurrer
should not have been sustained to the petition.

In the case of the City of Fort Worth v. Davis, 57 Texas, 225, the
questions discussed in the opinion of the Court of Civil Appeals made
the basis of the application for mandamus were not in issue. In that
case, among other questions presented, was one whether or not the
statute then in force (numbered at that time Art. 3785), which pro-
vided that, "If at an election held for that purpose, at which none
but property tax-payers, as shown by the last assessment rolls, who
are qualified voters of such city or town, shall vote, two-thirds of those
voting shall vote in favor thereof, such an amount shall be raised by
taxation, not to exceed one-half of one per cent. * * * " was
constitutional. The question as to the validity of that provision
of the statute relative to the names of property taxpayers appearing
on the last assessment roll, was not involved. The issue is stated in
the opinion of this Court as follows:

"It is claimed for appellee that article 3785 of the Revised Statutes
is unconstitutional, in that it allows a vote of two-thirds of the tax-
payers voting to authorize the tax, whereas it is said the constitution
requires an affirmative vote of two-thirds of all the tax-payers of
the town who are qualified voters. Our opinion is that the constitu-
tion does require such an affirmative vote. The language is: 'If .
. . two-thirds of the tax-payers of such city or town shall vote for
such tax.'"

Concerning this subject the court further said:

"But the constitution prescribed no means of ascertaining the
number of tax-paying qualified voters in the city. The duty of doing
this, and the consequent right of selecting such means and mode of
doing it as they may deem best, having reference to practicability
and convenience, must devolve on the legislature. This is the express
provision of the constitution in the section authorizing counties and
cities on the coast to levy a tax for the construction of sea-walls and
breakwaters, 'upon a vote of two-thirds of the taxpayers therein
(to be ascertained as may be provided by law).' Art. XI, sec. 7.
From the necessity of the case, a like provision must be implied in
the clause we are considering. A reference to the last assessment roll
would obviously be open to objection as inaccurate. Some who were
tax-payers when the roll was made may have died or removed, or
ceased to be tax-payers. Other tax-payers may have moved in, or
have been casually omitted. Absolute accuracy in ascertaining
the number of property tax-payers who were also qualified voters
is manifestly not obtainable. The legislature have assumed that on

a question of taxation, affecting his purse, every tax-payer would be desirous of voting, and that the best test of the number of tax-paying voters on the day of the election is the number of votes cast, Practically this may prove a bad test. So may any other that can be suggested. The legislature have adopted this as under all the circumstances the best test, and there are numerous cases which seem to support their authority to do so.''

It is thus seen that the insistence was that the declaration of the statute that the required vote should consist of ''two-thirds of those voting'' was void, for the reason that the Constitution provided that the tax must be carried by an affirmative vote of ''two-thirds of the tax-payers.'' The real question discussed by the court was whether or not the method of determining two-thirds of the taxpayers provided for by the Constitution by declaring that the tax could be carried by two-thirds of those voting, was a correct one under the Constitution. The court seems to have been of the view that it was a correct test. However, the question was not decided, for in the paragraph immediately following the quotation last made from the opinion this court expressly says: ''The question is one of importance, and as we have not found it necessary to do so, it is not intended to pass upon it. Whatever our opinion as to the unconstitutionality of that part of the statute which we have been considering, it would not follow that the election was invalid.''

It is thus seen that the Supreme Court in the case of City of Fort Worth vs. Davis did not pass upon any question that is involved in the opinion of the Court of Civil Appeals before us for consideration. An examination of the opinion makes it equally clear that nothing actually decided by the Court of Civil Appeals at San Antonio is in conflict with the opinion in Bonham vs. Fuchs. The opinion discloses that all the court really decided was that the charter of San Antonio did not undertake to make the provisions thereof with reference to the assessment roll of the city and the production of tax receipts and affidavits the exclusive test as to who were property taxpayers of the city having a right to vote under the charter. The issues with reference to this matter are stated in the opinion as follows:

''The special exceptions are aimed at paragraphs 9, 12, and 14 of the amended pleadings of appellant. Paragraph 9 merely copies two sections of the charter of the city, and, standing alone, without any allegation of the sections having been violated, states no ground of contest of the election, but it must be read in connection with paragraphs 12 and 14, which set up the grounds of contest. It is alleged that section 5 of the city charter provides that, when tax-payers alone can vote, only actual tax-payers whose names appear

on the last assessment roll of the city as property tax-payers are meant, but with the proviso that any person, otherwise qualified, whose name does not appear on the roll may vote by producing his property tax receipt of the preceding year and making affidavit that he has paid the taxes, and the word 'sworn' shall be written on the back of his ballot and opposite his name on the poll list. It was alleged that 'approximately 6,621 persons who were not qualified under that section and section 53 to vote did vote at the election of December 4, 1923.' No allegation was made in paragraph 12, in what respects the requirements of the charter had not been complied with. Section 53 merely requires that propositions for borrowing money shall be submitted "to the qualified taxpaying voters of the city.' In paragraph 14 of the pleading it is alleged that the word 'sworn' was not written by an officer on the back of the ballot of any person who voted at said election, nor was such word written opposite the name of such voter on poll lists, and no affidavits were made, as required in section 5 of the charter, nor were any tax receipts produced. These are the grounds of attack on the qualifications of the voters.''

Concerning the charter the court then held that its purpose was to provide one mode at least by which it could be ascertained whether the person desiring to vote had paid taxes on property in the city; but that when that object was attained, by whatever method, the voter was qualified under the Constitution. The court held that the charter did not provide that unless it be ascertained in the way prescribed that the voter is qualified that he would be disqualified from voting; that the charter meant that if the voter be a property taxpayer, and that fact is made known in any satisfactory way to the officers of the election, the voter was qualified.

The court stated that the petition failed to allege that anyone who cast a ballot was not an actual taxpayer in the City of San Antonio, and that in the absence of any allegation that any person who voted in the election was not a taxpayer in the city, the presumption would prevail that the voter was a taxpayer. Concerning these several matters the court in part said:

''The object of the section of the charter in question was to provide one mode at least in which it could be ascertained whether the person desiring to vote had paid taxes on property in the city. When that object was attained, by whatever method, the voter was qualified under the Constitution. The charter does not provide that unless it be ascertained in the way prescribed the person desiring to vote shall be disqualified from voting. It does not say that the mode of testing the voter's qualification is exclusive of all others, and no other method of ascertaining that a person is

a taxpayer can be used. If the voter be a taxpayer, and that fact is made known in any satisfactory way to the officers of election, the voter is qualified. There is no allegation in the petition that any person who cast a ballot at the election was not a taxpayer in the city of San Antonio. The provisions in the charter do not attempt to prescribe any additional qualifications for the voters, but merely provide a means by which the constitutional qualifications might be ascertained. In the absence of any allegation that any person who voted at the election was not a taxpayer in the city, the presumption will prevail that each voter was a taxpayer. The allegations in the petition do not assail the constitutional qualifications of the voters, but merely attack their right to vote on the ground that the manner of ascertaining such qualifications was not followed. It is true that it is alleged that certain voters 'were not then and there duly qualified and actual taxpaying voters of said city of San Antonio,' but that allegation is coupled with the reasons for the general allegation, which were that a certain section of the charter, and not of the Constitution, had not been complied with. It is not in terms alleged that any man permitted to vote had not paid his taxes. In the exhibit attached to the petition the grounds of ineligibility are not that the voters had not paid their taxes, but that they 'do not appear on tax roll, but on poll list' and 'voted and not on tax rolls, but are on poll list.' The only grounds for attacking the right of the voters to cast their ballots were not that they had not paid their taxes, but that they had not proven it to the officers of the election in the manner provided in the city charter.''

The matter is summed up in the last paragraph quoted from the court's opinion, to-wit: That the only grounds for attacking the right of the voters to cast their ballots were not that they had not paid their taxes, but that they had not proven it to the officers of the election in the manner provided by the city charter. The court then held, as shown from the quotation, that the charter did not mean to make the methods prescribed herein for proving that the voter was a taxpayer the exclusive methods, and that therefore those who were otherwise shown to be property taxpayers were entitled to vote. The court then said: ''The pleadings in this case fail to meet the requirements of precision, particularity and certainty, and the exceptions were properly sustained.''

It is apparent from the quotations we have made from the opinion of the court that what the court did was to construe the charter of the City of San Antonio and to hold that under this charter those who voted had a right to vote, and that since the plaintiff's petition did not declare that they were not in reality property taxpayers,

' but only that they had not complied with certain provisions of the charter, which the court held not to be exclusive or mandatory, the petition was defective and the exceptions properly sustained. This clearly presents no conflict with the Fuchs Case. As shown from our previous statement, in the Fuchs Case the petition not only alleged that the names of the voters did not appear on the assessment roll of the city there involved, but that the allegations were that they paid no tax on property in the city for a specified year, did not pay taxes on property therein, and "were not taxpayers" when the election was held.

It is thus seen that there was a material and far reaching difference between the allegations of the two petitions, and that the opinion of the Court of Civil Appeals at San Antonio, at most, merely construed the charter of the City of San Antonio, and did not pass upon the constitutionality question discussed in the Fuchs Case. Whether or not the Court of Civil Appeals correctly interpreted the charter provisions of the City of San Antonio, and whether or not that court correctly construed the petition, were matters for the Court of Civil Appeals, and are not subject to review in the present proceeding.

Since the opinion of the Court of Civil Appeals upheld the action of the trial court in dismissing the petition upon the grounds shown, it is immaterial in this action that the general and special exceptions sustained, or even the opinion of the trial court, may have presented other and different reasons. It is a conflict with the opinion of the Court of Civil Appeals which must be shown to authorize an order for mandamus. Leave to file the petition for mandamus is accordingly refused.