ISRAEL WORSHAM ET AL. v. A. RICHARDS ET AL.

1. JURISDICTION—COUNTY SEAT—COUNTY COURT.—As the statute has required the application to remove a county seat, to be made to the County Court, and they are to determine whether it has been made by a majority of the registered voters of the county, and to order the election and give notice thereof, it may be inferred that the Legislature intended to confide to the County Court the investigation and determination of all the other facts necessary to a fair and legal election.
2. COUNTY COURT—JURISDICTION.—The members of the County Court must be organized as a court, under the law, before their conclusions can be received and acted on as the judgment of the court.
3. COUNTY SEAT—PARTIES.—The citizens of a county have no such legal right, in the locality of a county seat, as will enable them to bring a suit to prevent a change of it by the authorities appointed by law to act on that subject.

APPEAL from Montgomery.   Tried below before the Hon. James Masterson.

*N. Hart Davis, Joseph Boone,* and *J. R. Peel,* for appellants.

*L. A. Abercrombie,* for appellees.

(The written arguments on both sides were exhaustive, but related chiefly to the interpretation of the statutes on the subject involved, and are omitted on account of their length.)

ROBERTS, CHIEF JUSTICE.—Notwithstanding several acts have been passed, and constitutional provisions have been made, as well as numerous decisions have been rendered,

upon the subject of the removal of the county seat of a county, it still seems to be a subject of difficulty whenever it arises in the courts.    This originates mainly from the incompleteness of the statutory provisions relating to it.    (Hart. Dig.,.167–8;  Paschal's Dig., arts. 1067, 1068;  Laws of 1873, p. 194;  Laws of 1874, p. 187;  Constitutional Amendment, in Laws of 1874, p. 234, and Const. of 1876, sec. 55, art. III.)    They do not specify who shall declare the result of the election, but say, that "the result of said election shall establish the seat of justice, in accordance with the provisions of the first section," &c.    They provide, that it shall require the vote of two thirds of the qualified voters of the county to remove the county seat: *Provided, however,* That "if in any county, the county seat shall have been established at a greater distance than five miles from the centre of said county, a majority of all the votes cast shall be sufficient for its removal: *Provided,* Such removal shall be within the limits of five miles from the centre of said county;" and do not provide how the distance of the places voted for from the centre of the county shall be ascertained.    If there should be any dissatisfaction as to the mode of conducting the election, there is no mode of contest provided, as in the election of officers.    (Acts of 1873, p. 67.)    The Constitution has provided that the Legislature shall pass no special law upon the subject.    It is made the duty of the County Court to order the election, and give notice of it, which is to be conducted in the same manner as elections for State and county officers.    By the law in force, election returns were made to the presiding justice of the county, who was required to "open them and estimate the result," and deliver a certificate of election to the candidate for whom the greatest number have been polled in the case of a county officer. This duty is ministerial or clerical, and requires nothing to be determined by him beyond a computation of numbers.    The computation and result are recorded in a book, and stand as the evidence, in his office, of the election; and the cer-

tificate, delivered to the successful candidate, is his evidence of his election. In the election for a county seat, the same computation can be made and recorded, exhibiting the result in the office; but there the application of this law ceases, for there is no person to whom a certificate of election is to be delivered; and the centre of the county, and the respective distances of the different places from it, are to be ascertained, in order to apply the rule, prescribed in the statute, of a majority of the votes in one case, and two thirds in the other, in determining which place has been selected as the county seat. These matters require investigation and the exercise of judgment; and there are no specific directions in the law as to how, or by whom, they shall be determined, and how the result of them shall be declared authoritatively. The result of the election, as computed and recorded in the office, cannot establish the seat of justice, without these other facts being ascertained and applied to them. It would seem to be proper, also, in so important a matter, that there should be a declaration, by some proper authority, placed on record, of the state of the votes and the other facts, with the conclusion drawn from all of them together, and the name of the place thereby selected. The power to perform these things, which are necessary to determine the result of the election, but which are not expressly required of any one, must be derived by implication, whether held to belong to the presiding justice or to the County Court.

As the statute has required the application to remove a county seat, to be made to the County Court, and they are to determine whether it has been made by a majority of the registered voters of the county, (which, now that there is no registration, becomes an important investigation and determination,) and are required to order the election, and give notice thereof, it is not unreasonable to infer, that the Legislature intended to confide to the County Court, the investigation and determination of all the other facts necessary to a fair and legal election. Its general powers are more adequate to

such a task than are those of the presiding justice, while act-ing under the ministerial authority to which he · is confined in the general election law, that has been referred to, which simply requires him to receive and open the returns, count and record the votes, and deliver the certificate to the candi-date for whom the highest vote has been cast. There is no discretion allowed him, even if he were satisfied that such candidate, by stuffing the ballot-boxes, or other frauds, had been returned as having twice as many votes as there were voters in the county. In such case, the law has provided a remedy in a contest of the election in the District Court of the county. No such remedy has been provided for a con-test of the validity of the election for a seat of justice, if this election law is the only power granted in reference to the manner of conducting the election, and is to be literally carried out. As far as practicable, the presiding justice may compute and record the vote; but as there is no one to receive a certificate of election, his duty is at an end, and the law is wholly inadequate to accomplish the object contem-plated. There is no objection seen to the presiding justice performing this duty to the extent required by the election law, which is, to compute and record the vote as returned to him; but to let that stand as the evidence of the result to be acted on in all cases, would make the place of the county seat depend upon what part of the county could get up the greatest number of fraudulent or fictitious votes. In the event such a thing should be attempted, the County Court would be an appropriate tribunal to determine the result of the election, after an investigation of the facts relating to it.

Again: the facts to be ascertained—such as finding the cen-tre of the county, and the distances from it to the places voted for—may require expenses to be incurred, which the County Court alone is competent to order to be paid. Further, the County Court is a sort of legislative body for the regulation of county affairs; and as this question of county seat has always heretofore been held by the courts of this State to be

a political one, it is reasonable that the Legislature should intrust so important a matter to the County Court, rather than to one member of that body—the presiding justice.   This has been rendered still more appropriate, if not absolutely necessary, by the Constitution having taken from the Legislature any power to control the question of county seat by a special law.   As long as the Legislature could be appealed to for its action, any difference between the presiding justice and a majority of the County Court, might readily be settled. As the Legislature now cannot act in it by special law, and as there is no mode of contesting the election, it is proper that the power to have the law carried out should be confided to that tribunal, a majority of whose members control, generally, the affairs of the county, if for no other reason, to prevent such confusion and uncertainty as are exhibited in this case, as well as others that can be easily imagined.

Under the law, as originally passed in 1838, the duty of determining upon, ordering, and giving notice of the election for the removal of a county seat, was confided to the chief justice of the County Court.   (Hart. Dig., art. 338, sec. 2.) Under this law, the implied power to receive and count the votes, and declare the result of the election, by the chief justice, was assumed and acted on, and such assumption and action was held to be proper.   (Alley *v.* Denson, 8 Tex., 297.) Now, when this power has been given, and this duty has been imposed on the County Court, (by the law of 1873,) the same implication in their favor arises, to do everything else that may be necessary in the execution of the law, and to determine and declare the final result of the election.   Why make the change, if it was not to intrust the performance of this most important matter to the judgment and discretion of the whole court, elected by the voters of the county, rather than to one member of it?   The very fact of making the change in the law is a convincing argument that an improvement in the law, in giving greater security to the rights of the people of the county, was intended by the Legislature; for certainly

there is no more important business intrusted to the County Court than this, of carrying into effect the law, in the removal of a county seat. (Paschal's Dig., arts. 6110–6112.)

According to the allegations of the petition, the three members of the County Court acted in this case without authority, not having been called in special session as a court, which the District Court, in acting on exceptions to the petition alone, must have regarded as true, if the court had had jurisdiction to adjudicate the case at all. Of course, the members of that court must be organized as a court under the law, to make any action valid on their part.

It is contended by counsel for appellants, that, although this has been repeatedly held to be a question pertaining to the political department of the Government, it has become a subject of judicial cognizance, by the provision in the Constitution of 1869, which gives to the District Courts power to issue writs necessary to give them a " general superintendence and control over inferior tribunals." (Const. of 1869, Art. V, sec. 7, Paschal's Dig., p. 1115.) This clause is not contained in the Constitution of 1875, and therefore the District Court could not now issue any writ by virtue of said clause. (Wall v. The State, 18 Tex., 682.) If, however, the District Court could now issue such a writ, for the purpose of superintending and controlling the action of the County Court, it must be in relation to some private right of a person or persons which is recognized by law as being the subject of judicial action. It has been held by this court, in cases involving the question of the removal of the county seat by a vote of the qualified voters, that the citizens of the county had no such legal right in the locality of the county seat as would enable them to bring a suit to prevent a change of it by the authorities appointed by law to act on that subject. (Alley v. Denson, 8 Tex., 297; Arberry v. Beavers, 6 Tex., 457; Walker v. Tarrant County, 20 Tex., 19; McClelland v. Shelby County, 32 Tex., 17.)

It is unnecessary to consider or to endeavor to point out

what action of the County Court might possibly be such as to affect the rights of individuals in such way as to entitle them to a suit in the courts for redress. But upon this particular question of the removal of the county seat, the decisions of this court have been numerous and uniform, from an early period to the present, that no such vested right exists as will authorize this proceeding in court to redress it. Following those decisions on this ground, we must affirm the judgment of the District Court dismissing the petition of plaintiffs.

Affirmed.