EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN v. FREEMAN. (No. 1876.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1917. Rehearing Denied Jan. 3, 1918.)

1. INSURANCE ⬤⟿791(1)—FRATERNAL BENEFIT SOCIETY—SUICIDE.

A fraternal benefit society policy for $1,000 provided that "on·satisfactory proof of total and permanent disability" the insured should receive the value of the policy at that time in ten equal annual installments, and, should death intervene, the installments should be completed to the beneficiary, and in the event of self-destruction there should be paid only one-fifth the amount payable in case of natural death. *Held*, where insured suicided before proof of incurable insanity had been furnished the society, and before it had paid anything on account thereof, the beneficiary's right to recover was predicable, not on disability, but only on insured's death; and, death being due to suicide, she could recover only $200.

2. APPEAL AND ERROR ⬤⟿1151(2)—REFORMING JUDGMENT.

Where appellee beneficiary suing fraternal benefit society was not entitled to recover on her pleadings, the appellate court could look to appellant's pleadings, which conceded a smaller sum due appellee on another theory, and reform the judgment to adjudge appellee's recovery of the smaller sum.

3. APPEAL AND ERROR ⬤⟿1152—REFORMING JUDGMENT—COSTS.

It appearing that before trial appellant tendered appellee a smaller sum than sued for, the appellate court, in reforming judgment for appellee to reduce it to such smaller sum, could further reform the judgment to adjudge against appellee costs accruing in the trial court after such tender.

Appeal from Titus County Court; J. W. Tabb, Judge.

Action by Mrs. Ruthie P. Freeman against the Eminent Household of Columbian Woodmen. From judgment for plaintiff, defendant appeals. Reformed and affirmed.

Appellant was a fraternal benefit society. By a contract dated October 21, 1908, it bound itself, on satisfactory proof being made of the death of R. J. Freeman while in good standing as a member of the society, on conditions specified, to pay $1,000 to his wife, appellee here. The contract contained such stipulations as follows:

"On satisfactory proof of total and permanent disability at any age, this guest shall receive the value of this covenant at the time of such disability, in ten equal annual installments. Old age shall be a cause of disability after 70. Should death intervene, the installments shall be completed to beneficiary.

"In the event of loss of two eyes, or two limbs at or above the ankle or wrist, or ·one limb and one eye, or for incurable insanity, this guest shall receive the same benefits as above provided for total permanent disability.

"In the event of loss of one arm, one foot, or total and permanent loss of one eye, this guest shall receive one-half the value of this covenant at the time of such loss, in five annual installments, and shall further have the option to continue this covenant in force till death, in which case the additional half of the same will be paid in further accumulation. Should death intervene the installments shall also be completed to beneficiary.

"This covenant shall not be contested for suicide, but there shall be due and payable, in event of self-destruction, only one-fifth of the amount of benefits which would have been payable in event of death by natural cause, provided, however, that in no case shall the benefits in case of suicide exceed five hundred dollars."

R. J. Freeman died September 3, 1915. This suit was commenced by appellee April 26, 1916. In her petition, after alleging that appellant issued "a certain certificate" whereby it agreed to pay her $1,000 at the death of said R. J. Freeman, appellee alleged:

That "the said certificate further provides that defendant shall be liable to R. J. Freeman in the event he (R. J. Freeman) became permanently disabled, for the full amount of the said certificate, which is $1,000; that R. J. Freeman became permanently disabled several months before his death, and was afflicted with an incurable malady that resulted in his permanent disability. Said certificate provides that said amount shall be payable in ten annual installments unless death intervene between the happening of the permanent ·disability, and then whatever remained unpaid shall be payable to the beneficiary, who is this plaintiff. Plaintiff says that no payment was ever made to R. J. Freeman of any part of the amount named in this certificate to R. J. Freeman prior to his death, and that she is entitled to receive the full sum of $1,000 from defendant because of the permanent disability to R. J. Freeman prior to his death and because of his death after having become permanently disabled."

In its answer appellant alleged that said R. J. Freeman suicided, and that for that reason, and others which need not be here specified, it was liable to appellee in the sum of only $200, which, it alleged, it tendered to her before she commenced the suit, and which it still tendered to her.

The trial was to the court without a jury. Finding as a fact that R. J. Freeman "became sick in the year 1914, and in the month of June, 1915, became incurably insane and totally disabled," the court concluded as a matter of law that appellee was entitled to recover of appellant $1,000, and rendered judgment accordingly.

L. E. Keeney, of Texarkana, for appellant. Seb F. Caldwell, of Mt. Pleasant, for appellee.

WILLSON, C. J. (after stating the facts as above). Having found that the insured, be-

cause of incurable insanity, became permanently disabled before he died, the trial court concluded that appellee was entitled to recover $1,000 of appellant, notwithstanding proof of such disability was not furnished, and appellant did not pay anything on account thereof during the lifetime of the insured.

In reaching that conclusion the court must have ignored provisions in the contract which operated, we think, to deprive appellee of a right to recover anything on account of disability of the insured, and a provision therein that "in no case," quoting, "shall the benefits in case of suicide exceed $500."

No reason is apparent why those provisions should be ignored. It is plain that the contract can be so construed as to give effect to all its provisions; and, as it can, it ought to be so construed and the rights of the parties determined with reference to such construction.

Effect is given to every provision in the contract, if it is construed to mean: (1) That the insured, if he became permanently disabled on furnishing satisfactory proof of the fact to appellant, was to be paid $1,000 in ten equal annual installments. If he died before all the installments were paid, those remaining unpaid were to be paid to appellee, unless his death was due to suicide, in which event, if appellant had paid to the insured as much as $500, appellee was not to be paid anything, but, if it had paid him less than $500, payment of the installments was to continue to her until appellant had paid to the insured and appellee together $500; (2) that if the insured became permanently disabled and died from other causes than suicide before making proof of such disability and receiving a payment from appellant on account thereof, appellee was not to be paid anything on account of his disability, but was to be paid $1,000 on account of his death; if he suicided, she was to receive only $200; (3) that the insured, if he lost an arm, foot, or eye, was to be paid $500 in five equal annual installments, and was to have a right to have the contract continued in force until he died, in which event, if the five installments were not paid to him before he died, those remaining unpaid were to be paid to appellee, and $500 in addition thereto, unless his death was due to suicide, in which event appellee was not to be paid anything on account of his death.

[1-3] It is obvious, if the contract should be so construed, and we think it must be, that, the insured having suicided before proof of his disability had been furnished to appellant, and before it had paid anything on account thereof, appellee's right to recover anything of appellant was not predicable on such disability, but was predicable alone on the death of the insured, and that, as his death was due to suicide, she was entitled to recover only $200. It is further obvious, if appellee's pleadings alone could be considered as a basis for the judgment, that one in her favor for any amount could not be sustained; for she sought a recovery only on account of disability of the insured. But we have concluded that the pleadings of appellant can be looked to for that purpose, and, it appearing therefrom that appellant conceded it was liable to appellee in the sum of $200 on account of the death of the insured, that the judgment of the trial court should be here so reformed as to adjudge a recovery by her of that sum only, and, it appearing that before the trial began appellant tendered said sum to appellee, that the judgment should be further so reformed as to adjudge the costs which accrued in the trial court after such tender against appellee. Therefore the judgment will be reformed accordingly, and as so reformed will be affirmed.

