STAPLES, Secretary of State, et al. v. STATE ex rel. EUBANKS et al. (No. 8968.)

(Court of Civil Appeals of Texas. Dallas. Nov. 4, 1922. Rehearing Denied Nov. 5, 1922.)

1. Quo warranto ⊙⟹34—Citizen with no more interest than that of other citizens may institute quo warranto proceeding to test right of candidate to have name on ballots.

Under Acts 36th Leg. (1919) c. 88, § 9 (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b), any citizen may institute a proceeding in quo warranto to test the right of a candidate claimed to have violated Vernon's Sayles' Ann. Civ. St. 1914, arts. 3174k to 3174vv, limiting disbursements and expenditures in behalf of a candidate for the United States Senate at primary elections, by causing the prosecuting attorney to bring an action in quo warranto on the relation of such citizen.

2. Injunction ⊙⟹3—In quo warranto proceeding to test candidate's right to have name printed on ballots, court authorized to grant temporary injunction.

In quo warranto proceeding, to test right of candidate claimed to have violated Corrupt Practices Act, to have name on ballot, under Acts 36th Leg. (1919) c. 88, § 9 (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b), the court was authorized to issue a temporary injunction restraining the secretary of state and the election board from causing the candidate's name to be printed on the ballots, though the only remedy specified by such statute is quo warranto, since the court in the exercise of its equity powers may enjoin any unwarranted interference with the subject-matter of a suit under Const. art. 5, § 8.

3. Injunction ⊙⟹80—Officers may be enjoined from certifying candidate's name to be printed on ballots, where candidate is not entitled thereto.

The secretary of state and members of the election boards may be enjoined from certifying the name of a candidate to be printed on the election ballots, where such candidate is not entitled to have name printed on ballots.

---

⊙⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Injunction ☞74—Officers may be enjoined from doing unlawful act under claim that law requires it.**

The performance of the lawful ministerial duties of an officer cannot be enjoined, but the doing of an unlawful act by such officer under the claim that the law requires it of him may be enjoined.

**5. Injunction ☞141—Temporary injunction restraining printing of candidate's name on ballots denied, where because of laches it would prevent printing of names regardless of determination on merits.**

In quo warranto proceeding to test the right of a candidate claimed to have spent too much money to have name printed on ballots under Act 36th Leg. (1919) c. 88, § 9 (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b), a temporary injunction restraining the secretary of state and the election board from certifying the candidate's name to be printed on the ballots will be reversed, though the court in such case had authority to grant a temporary injunction, where the effect of sustaining the injunction would, because of laches in commencement of suit, in effect prevent the candidate from having his name appear on the ballot because of proximity of election day.

**6. Appeal and error ☞833(3) — Court warranted under stated circumstances in limiting time for motion for rehearing; "summary," "summarily."**

In quo warranto to determine right of candidate to have name printed on ballots under Acts 36th Leg. (1919), c. 88, § 9 (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b), providing that such proceedings shall be "summarily heard and disposed of by both trial courts and appellate courts," the Courts of Appeals in reversing an order granting a temporary injunction, because the effect of sustaining such injunction would be to prevent names from being printed on ballot, regardless of final outcome of case because of proximity of election day, on the ground that relators were guilty of laches in the commencement of the suit, will limit the time within which a motion for rehearing shall be filed, the terms "summary" and "summarily" conveying the idea of rapidity of performance and quickness of execution.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Summarily; First and Second Series, Summary.]

Appeal from District Court, Limestone County; A. M. Blackmon, Judge.

Quo warranto by the State on the relation of L. E. Eubanks and others against S. L. Staples, Secretary of State, and others. From an order granting a temporary writ of injunction, the defendants appeal. Judgment reversed and injunction dissolved, with directions.

See. also, 244 S. W. 1064.

W. A. Keeling, Atty. Gen., John C. Wall, and L. C. Sutton, Asst. Attys. Gen., David B. Trammell, of Fort Worth, and Pope & Young, and Felix Robertson, all of Dallas, for appellants.

Luther Nickels and W. W. Nelms, both of Dallas, and Richard Mays, of Corsicana, for appellees.

PER CURIAM. This is an appeal from a temporary writ of injunction granted by the Hon. A. M. Blackmon, judge of the Seventy-Seventh judicial district of Texas, temporarily restraining S. L. Staples from certifying the name of the Hon. Earle B. Mayfield to the various election boards of Texas to be printed upon the general election ballots as the candidate of the Democratic party for United States Senator at the general election to be held on the 7th day of November, 1922.

The injunction issued by the judge of said court was issued as a proceeding ancillary to a suit by information, in the nature of a quo warranto instituted in the district court of Limestone county by L. E. Eubanks, county attorney of Limestone county, Tex., upon the relation of Wm. Kennedy and Robt. Hanna, who are alleged to reside in and to be citizens of, Limestone county, Tex., and also alleged to be qualified voters and taxpayers under the Constitution and laws of Texas. The quo warranto proceeding was instituted under and by virtue of the provisions of section 9 of c. 88 of the Acts. of the 36th Legislature of Texas (Vernon's Ann. Civ. St. Supp. 1922, art. 3174¼b).

This enactment was designed by the Legislature to prevent the control of party primary elections by the use of money. It regulates and limits the expenditure of money in such elections, either by candidates for office, or by their partisans and supporters. It is a law denominated by the generic term a "Corrupt Practice Act." Section 9 of this law provides that the penalty to be inflicted upon any candidate, who knowingly violates any of its provisions, or knowingly permits or assents to the violation of any of its provisions in his behalf by any other person, shall be forfeiture of his right to have his name appear upon the primary election ballots, or, if nominated in the party primary election, to have his name placed on the official ballots at the general election. The same section provides that—

"Proceedings by quo warranto to enforce the provisions of this (section 9) section or to determine the right of any candidate alleged to have violated any of the provisions of this act to have his name placed on the primary ballot, or the right of any nominee alleged to have violated any of the provisions of this act to have his name placed upon the official ballots for the general election, may be instituted at the suit of any citizen in the district court of any county the citizens of which are entitled to vote for or against any candidate who may be charged in such proceedings with having violated the provisions of this act."

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The same section of the law provides that all proceedings instituted by virtue of it shall be advanced and summarily heard and disposed ·of by both trial courts and appellate courts.

Other statutory provisions, in pari materia, regulate and limit the amount of expenses to be incurred in behalf of candidates for United States Senator at party primary elections, and also provide for accountings and the filing of statements of disbursements relating to such candidacy. Article 3174k to article 3174vv, Vernon's Sayles' Ann. Civ. St. 1914.

Under the provisions of the statute regulating and limiting campaign expenses of candidates for nomination as United States Senator at any primary election held under the auspices of a political party, expenditures are limited to $10,000.

Among the allegations of the petition in the quo warranto suit is one to the effect that the Hon. Earle B. Mayfield, who claims to be the nominee of the Democratic party as United States Senator from Texas, violated the provision of the election law which limits expenditures by and on behalf of candidates for this office, for which reason he is alleged not to be the lawful nominee of the Democratic party for United States Senator. And it is alleged, in substance, that, notwithstanding the fact that he is not such lawful nominee and is not entitled to have his name appear on the ballots to be used throughout Texas at the approaching general election as such nominee, nevertheless, S. L. Staples, secretary of state, at the instigation of Mayfield, or otherwise, and acting or purporting to act as secretary of state, proposes and threatens wrongfully and unlawfully to certify to the "official boards" and to the members of such boards the name of the said Mayfield as the Democratic nominee and candidate for United States Senator, and that he is threatening to commit the alleged unlawful and wrongful act for the purpose and with the intent of causing or inducing such boards and their members unlawfully to have printed and distributed for use at such election, ballots bearing the name of the said Mayfield as the Democratic nominee and candidate for United States Senator at said general election. It is also alleged that the official boards, made defendants in said cause, and the members of the same, wrongfully and unlawfully propose and threaten to, and unless enjoined pending a hearing of the cause will, print, or cause to be printed, official ballots containing Mayfield's name as the Democratic candidate and nominee, and will thereupon provide all election officers with such ballots for use as official ballots in all voting places in Texas.

On the 28th day of October, 1922, the petition for proceedings in the nature of a quo warranto was presented to the judge of the district court of the Seventy-Seventh judicial district, who, upon consideration of it, ordered that it be filed and that citation issue as provided by law, and on the 2d day of November, 1922, granted the temporary writ of injunction which is the subject of this appeal.

The attack made upon the suit as a basis of the relief sought is comprehended in the following summarized statement of appellant's contentions:

It is contended in behalf of appellants, first, that the relators in the quo warranto proceeding do not possess legal capacity to institute and maintain the suit for the reason that they possess no pecuniary interest, ;or other interest different from that belonging to all the citizens of Texas; second, that the parties plaintiff are not entitled to an injunction because it is not available for the protection of any political right; third, it is contended that appellees are not entitled to a remedy by injunction because the only remedy provided in the law is by a quo warranto; fourth, the contention is made that the secretary of state and the election officials cannot be enjoined from performing their official duties in connection with the placing of the name of the candidate on the official ballots, until after the candidate's right in that respect has been adjudicated; fifth, on the ground of public policy, it is asserted, by appellants, that the injunction should be held improper as against the secretary of state and election officials until after the allegations of violation of the law have been substantiated and adjudicated; sixth, appellants assert that an injunction will not lie in a district court against the secretary of state because that official is a member of the executive department of the state government, and that an injunction does not lie to restrain the local officials from performing the duties imposed upon them by law to print the names of candidates upon official ballots; seventh, it is contended that injunctive relief was unnecessary and improper to preserve the status quo in this matter; and, lastly, the proposition is advanced that the effect of the remedy granted under the exigencies now existing obtains the same effect that could be obtained by appellees by virtue of a final adjudication upon the facts, and that the suit cannot be determined within sufficient time previous to the date of the general election for Mayfield's name to be certified and ballots printed and distributed for the election; that appellees are guilty of laches in seeking the remedy granted by the trial court and appealed from.

We do not deem it necessary to discuss in detail or with any elaboration the various propositions advanced on behalf of appellants. Accordingly, we shall dispose of the various contentions made by merely stating our conclusions.

[1] It seems to us from the record before us that the suit was brought in precise conformity with the provisions of section 9 of the act which authorizes such suits. Unless, therefore, the feature of the law authorizing the proceedings should be held to be unconstitutional, we can perceive of no sound reason why the appellees do not possess legal capacity to institute and maintain the suit. The law has been held expressly to be constitutional by the Supreme Court of this state in that court's answers to certain certified questions presented to it by this court in a recent suit involving the same subject-matter contained in the instant one. Staples et al. v. State of Texas ex rel. King et al. (Tex. Civ. App.) 244 S. W. 1064. The law being constitutional and the Legislature having prescribed in it that any citizen could institute the suit by quo warranto, and the proceeding being in the nature of a quo warranto by the county attorney upon the relation of Kennedy and Hanna, the capacity of the parties to institute and maintain the proceeding cannot be soundly questioned. The right may be conferred upon a citizen by the Legislature to institute and maintain such proceedings.

[2] Since the parties plaintiff are clothed by legislative fiat with the capacity to proceed in the manner reflected by the institution and prosecution of this suit, the general theory to the effect that relief by injunction for the protection of political rights is not available to appellees has no application.

Appellants' contention that, because the statute provides for no relief except by quo warranto proceedings, and that, since this specific remedy is supplied, all others are excluded, we think, is utterly untenable. Appellees are in fact and in truth proceeding by quo warranto to obtain their remedy; they are seeking no other method of adjudicating the question of whether or not Mayfield has forfeited his right and is subject to the penalty provided in section 9 of the law. Of course, relief by injunction cannot be substituted for relief by quo warranto, when the latter is the procedure prescribed by law in a particular case. In such instance the final adjudication must be arrived at through quo warranto in the manner prescribed rather than by injunction or other equitable proceedings. But appellees are not seeking their judgment upon the merits of the main suit through the medium of injunction. They have called upon the court to invoke its equity power, not for the purpose of determining by that means the rights of the parties in relation to the subject-matter of the suit, but to hold and preserve within its jurisdiction that subject-matter, and prevent Staples et al. from destroying it while the court is proceeding to an adjudication of the question involved in the quo warranto.

Substantially, and in effect, the allegations upon which the injunction was issued were that Staples et al. by their acts would destroy the subject-matter of the suit and render the question therein to be determined purely a moot one, by doing in advance the very thing the right to do which must be determined by the trial court. That a court has the power to preserve the subject-matter of its jurisdiction in any case and prevent the destruction of that subject-matter by any person, we think, is beyond question. We therefore conclude that district courts do possess the power in suits of this character, or of any other character, to restrain and enjoin any unwarranted interference with the subject matter of a suit at law pending before them. Article 5, § 8, Constitution of Texas. If this were not true, such courts would be subject to being placed in the ridiculous position of having almost any trial rendered fruitless and barren through deprivation or impairment of its jurisdiction over the substance of such suit in an unauthorized and unlawful manner, at the instance either of third parties or that of one of the litigants.

[3] We reject the contention that the secretary of state and the members of the election boards are not subject to control by a court through injunction process. It is true that the secretary of state is an officer belonging to the executive department of the government. It is equally true that he and other officers cannot be interfered with by injunction in the performance of lawful ministerial acts required of them by law. But, if Mayfield has committed acts through which he has forfeited his right to appear on the ballot as the Democratic candidate for United States Senator, then he has lost the right to have his name certified as such candidate by the secretary of state, and, in such circumstances, the secretary of state is under no lawful duty and possesses no lawful right to make such certificate, and the act of making such certificate would be an unlawful one.

[4] As to whether or not Mayfield has forfeited his right to appear on the ballot as the Democratic candidate is the question to be determined by the court, and, incidentally, as corollary to the determination of that question is also the determination of the question of whether or not it is lawful for his name to be certified as such candidate. The performance of the lawful ministerial duties of an officer cannot be enjoined, but the doing of an unlawful act by such officer, under the claim that the law requires it of him, may be enjoined.

As to all the other above-stated contentions made on behalf of appellants, we regard them as being without merit, except that which we have set forth as the last in our summary of the grounds upon which

they seek relief by means of this appeal. Those contentions, except the last, as aforesaid, we shall not further discuss. We will rest content merely to say that they are untenable, and, we think, cannot be sustained before any tribunal.

We come now to a consideration of the single proposition which we think ought to be sustained, and by virtue of which the relief sought by appellants must be extended. Only two days now intervene between this date and the date of the election. One of those days is the Sabbath. Therefore, it might be said that only one day remains within which to determine upon the merits the paramount question involved in this litigation, which is the right of Mr. Mayfield to have his name appear upon the ballots next Tuesday; and should its determination be adjudicated in his favor, only one day remains for him to establish in the proceedings in the district court of Limestone county his right and have it effectuated by the printing thereafter and distribution on that particular day of ballots containing his name to the various election officers of Texas.

[5] While we are without guidance in the terms of the statute upon which this litigation is rested, still, with this situation confronting us, we must look to the basic and fundamental rights of the parties. We must know that, in the nature of things, a deliberate judicial procedure cannot be gone through upon the facts by the use of the judicial machinery and procedure provided by law to a final adjudication of the merits of this suit, within time for ballots to be printed and distributed to the election officers in conformity with that result, whatever it may be. It is therefore plain to us that, if the temporary injunction is kept in force until the suit is heard and determined, it will operate to acomplish, so far as Mayfield is concerned, precisely the same result that could be obtained as against him should appellees prevail in a final hearing. And, on the other hand, it will operate to the same end and defeat his right should he prevail in the quo warranto proceeding, just as effectually as if a judgment had already been entered finally forfeiting his right to have his name appear on the ticket. To sustain the injunction by denying the relief sought on this appeal by appellants would, in effect and in substance, be to give appellees all the relief upon a mere pleading which they could possibly obtain through a final judgment. It would be, in effect, to deny Mayfield his day in court. Equity and good conscience cannot approve the accomplishment of an end by such means. We must hold, without regard to whatever the merits upon the facts may be, that appellees are guilty of laches and come too late into the forum where they seek to maintain their

suit. Courts of equity will not lend their aid to do an inequitable thing, and, under the facts of this case, it is apparent that the granting of the writ of injunction as ancillary to the remedy sought by quo warranto would have the effect to determine the rights of the parties involved in such proceedings without adjudication.

Such being our view under the record and all the circumstances, of which we must take cognizance, we deem it our duty to reverse the judgment of the trial court and dissolve the injunction.

[6] Having consideration for the express directions of the law which authorizes this suit, to the effect that it shall be summarily disposed of in all courts, and a due regard for the exigencies confronting the parties with reference to the near approach of the date of the election, we think that we are under the necessity to disregard the established course of proceeding embodied both in the statute and in court rules with reference to the time of filing a motion for rehearing. The terms "summary" and "summarily" not only have a fixed and clear meaning in ordinary language, but they possess a well-defined meaning in the terms of legal phraseology. Such expressions convey the idea of rapidity of performance and quickness of execution.

We therefore deem it proper to require that no motion for rehearing in this cause shall be filed later than 9 o'clock a. m. on November 5, 1922.