## LESLIE et al. v. GRIFFIN. (No. 7425.)*

Court of Civil Appeals of Texas. Austin. Dec. 20, 1929.

Rehearing Denied Jan. 8, 1930.

*For opinion reversing judgment, see 25 S.W.(2d) ——.

536

See, also, 23 S.W.(2d) 534.

E. A. McDaniel, of McAllen, D. W. Glass-cock, of Mercedes, J. R. Dougherty, of Beeville, Jas. A. Graham, of Brownsville, B. D. Tarlton, of Corpus Christi, and E. F. Smith, of Austin, for appellants.

Ramsower & Seawell, of McAllen, Hart, Patterson & Hart, of Austin, B. D. Kimbrough, of McAllen, Geo. G. and M. E. Clough, of Houston, and Don A. Bliss, of San Antonio, for appellee.

BAUGH, J. At the general election of 1928, J. E. Leslie and Gordon Griffin were candidates for district judge of the Ninety-Third district, a district wholly within Hidalgo county, Tex. Leslie then held the office. The name of neither candidate was printed on the official ballot. Each voter wrote the name of the candidate of his choice on his ballot. The county composing said district contained 22 election precincts. After said election was held, the canvassing board, consisting of the county judge and the commissioners' court, refused to canvass the returns from precinct No. 14, known as the Weslaco box. The total vote in the district judge race, excluding the Weslaco box, showed that Leslie received 3,498 votes, and that Griffin received 3,484 votes, a majority for Leslie of 14 votes. The returns from the Weslaco box showed that in that box Leslie received 93 votes, and that Griffin received 689 votes. If the Weslaco box had been counted, Griffin would have received a majority in the district of 582 votes.

The canvassing board omitted the Weslaco box, and the county judge certified returns to the secretary of state showing that Leslie had been elected by a majority of 14 votes. This suit was thereupon filed in the district court of Travis county against the secretary of state, Judge Leslie, the county convassing board of Hidalgo county, and the election officers of the Weslaco precinct, alleging, amongst other things, that the returns sent to the secretary of state were false and fraudulent, asking that the secretary of state be restrained from counting same and from issuing a certificate of election to Leslie, and for a mandatory injunction compelling the county canvassing board to reconvene, recanvass the returns of said election, include therein the Weslaco box, and to certify correct returns of said election to the secretary of state. A temporary injunction was granted against the secretary of state, pleas of privilege of the county canvassing board and of Judge Leslie to be sued in Hidalgo county were overruled, and, in a hearing upon the merits, the district court of Travis county dismissed the election officers of the Weslaco precinct, and granted the relief prayed for as to the canvassing board and the secretary of state.

The trial was to a jury, but at the close of the evidence the court peremptorily instructed a verdict for the plaintiff. Separate appeals from the trial court's order overruling said pleas of privilege, and from the final judgment after a hearing upon the merits, have been prosecuted; but both appeals were submitted and argued together in this court. Further facts will be given in discussing the issues presented.

The election in question followed a heated campaign in which it appears that the appellee opposed what was known as the "administration ticket" in Hidalgo county, composed of the incumbent district judge, Leslie, the sheriff, county judge, county commissioners, and other county officials. It appears that during that campaign the appellee had charged the county judge and county commissioners with numerous derelictions, including squandering and waste of large county funds; and pledged the voters that, if elected, he would immediately convene a grand jury of white citizens and direct them to investigate the financial condition of the county and would endeavor to secure an audit of the county's books. It appears also that a ranger was on duty constantly during said election at the Weslaco box and accompanied the returns from that box to the county seat, and saw that same were there delivered to the county judge. It also appears that, unless the Weslaco box be excluded, Gordon Griffin was elected district judge, and that the chief, if not the only, ground for excluding the returns from that box was that the envelope in which same were transmitted to the county judge by the election judge was not sealed. In all other respects the returns were regular, duly signed, and certified, and reflected the true will of the voters of that precinct, 1,060 in number.

In refusing to open and estimate the returns from the Weslaco box, the county judge and county commissioners were guided, among other things, by the provisions of ar-

ticle 3026, R. S. 1925, providing, in part, that the returns here involved "shall be sealed up in an envelope and delivered by one of the precinct judges to the county judge of the county"; and by article 3031, which provides that "no election returns shall be opened or estimated, unless the same have been returned in accordance with the provisions of this title."

In title 50 of the Revised Statutes the Legislature has undertaken in detail to provide the machinery and procedure governing elections and election contests and to prescribe the qualifications of voters. Articles 2923 to 3099 of that title relate to general elections. Articles 3100 to 3173 deal with nominations. This title clearly discloses that the state is vitally interested not only in preserving the purity of the ballot, and in restricting the suffrage to its bona fide citizens, but that the Legislature has undertaken to regulate specifically by statute the steps which must be taken to accomplish those ends. Very little is left to the discretion of such officials, and nothing is left in the general election to the control of parties, as is true of primary elections. Bearing this in mind, we proceed to a consideration of the issues here presented.

The first contention made by appellants is that the trial court was without jurisdiction to try this case because the matters and things complained of were a part of the political administration of the government, not subject to review in a judicial proceeding. The case chiefly relied upon to sustain their contention is City of Dallas v. Street Ry. Co., 105 Tex. 337, 148 S. W. 292; followed in Winder v. King (Tex. Com. App.) 1 S.W.(2d) 587; and cited and applied in numerous Courts of Civil Appeals' decisions. In both of the cases above cited, however, the entire election proceeding was challenged on the grounds that the results of the election, if carried, would be void in the one case, in that the ordinance sought to be passed would be invalid; and in the other on the ground that the law under which the election was sought to be held was invalid. Those cases held that the questions raised were political, not judicial. But the question of whether or not election officials have complied with the written law regulating in detail their conduct presents not a political but a judicial question. Rights accruing to a candidate under and by virtue of express statutes become legal rights which he is entitled to protect in the courts of the state. This principle is forcefully stated by Chief Justice Phillips in Gilmore v. Waples, 108 Tex. 174, 188 S. W. 1037, 1040 (the same judge who wrote the opinion in Dallas v. St. Ry. Co.), as follows: "The contention of the committee upon this phase of the case is that there is presented but a political question and at most but a political right, and for the protection of such a right equity will not extend its aid. This would be true as to the character of question and right involved, but for the fact that the making of party nominations in this State is regulated by law. With our legislation covering the subject, whether a given nomination has been made in accordance with that legislation or in violation of it, presents, not a political question, but necessarily, a judicial question. For what purpose and to what end, it may appropriately be inquired, have the various statutes in relation to party nominations been enacted in this State if the rights and duties therein defined and the matters they purport to govern still present mere political questions, to be settled alone by party law and in the party forum, and are therefore beyond the cognizance of the courts? The very purpose of this legislation was to relieve these matters of their mere political character, as was their nature aforetime, and subject them to the regulation of the statute law. The courts exist only to enforce the law. This includes the statute law. If they have no cognizance of rights arising under a civil statute regulating a political party, upon the ground that the body regulated is political and therefore any question affecting it is also political, though in terms governed by an express statute, it must follow that a political party is beyond the control of the law. But political parties are not beyond the control of the law. When regulated by law, their action to the extent that it is so governed may be reviewed by the courts as the only means of giving effect to the sovereign law of the State. In such case the inquiry is judicial because made the duty of the courts; and the questions presented are likewise judicial because arising under the written law."

The above language relates to the primary election laws, involving party nominations. Much more should it be applicable to general elections in which the state, the candidates, and the entire suffrage are all vitally interested.

In the instant case it was under the express provisions of the statute that the appellants claimed to have acted. It would be absurd to say that the Legislature is vested with full power to regulate such matters by statute, but that the courts are without jurisdiction, when a compliance with these statutes is called in question, because they relate to the political administration of the government. When regulated by statute, such matters cease to be political and become judicial. Dewees v. Stevens, 105 Tex. 356, 150 S. W. 589; Staples v. State (Tex. Civ. App.) 244 S. W. 1068.

Appellants' next contention is that the trial court was without jurisdiction to grant equitable relief because appellee had an adequate remedy at law. If he had such remedy, they are correct. But the question here in issue is, Did the appellee have an adequate legal remedy for the specific rights asserted by him? We think not. True, he would have waited until the secretary of state had can-

vassed the false returns sent her, had certified the result to the Governor, and the Governor had issued a certificate of election to Leslie, and then could have contested the election as prescribed by the statute, or could have sued for the office. Such proceedings, however, would not have protected his right to a certificate of election, evidencing his prima facie right to the office, to which he was entitled by having received a majority of the votes cast in said election, unless the Weslaco box be thrown out. An injunction will not lie to aid a plaintiff in a contest for an office. But this is not an election contest nor a suit for the office. It may result incidentally in appellee obtaining said office, but, as presented here, it is a suit to prevent the counting by the secretary of state of illegal returns, to compel the county canvassing board to perform their legal ministerial duties required of them by the statutes, for the purpose of establishing the appellee's right to a certificate of election. Such certificate does not of itself give him possession of the office, but furnishes him prima facie evidence of the right, nothing more. Dean v. State, 88 Tex. 295, 30 S. W. 1047, 31 S. W. 185. In an election contest, or suit for the office, or in a quo warranto proceeding, neither the secretary of state nor the county canvassing board would be necessary parties. But appellee had a right to have these officers perform their ministerial duties, when their failure to do so deprived him of his legal right to a certificate of election. To illustrate: A might be in possession of lands, title to which B was entitled to recover. But suppose C were withholding from B his deed to that land for which B had paid consideration in full. As against A, B could bring an action in trespass or for possession. But his remedy in that respect does not afford him an adequate legal remedy against C to recover his deed. He can, if he will, first compel C to deliver him his deed, evidencing a prima facie right to title in him to his land. Possession of the land itself might then be an entirely different matter. It is manifest, we think, that a contest or other proceeding for the office itself is not an adequate remedy in the instant case, either for the appellee himself or for the people of his district. As stated in Riddell v. Childers, 156 Ky. 315, 160 S. W. 1067, 1069, where the commissioners had refused to include certain returns in their estimate, and a mandatory injunction was granted compelling them to do so: "The certificate of election is a valuable right; it entitles the holder to qualify at the beginning of the term; it gives him a prima facie right to the office; and these valuable rights may not be defeated by the simple failure of the election officers to do their duty."

In Bennett v. Richards (Ky. App.) 83 S. W. 154, 155, holding that a mandatory injunction is a proper method of compelling the correction of election returns, the court said:

"The person receiving the highest number of votes is entitled to the certificate of election, and this cannot be awarded him in a contest. This certificate has an intrinsic value. It is the evidence of the election of the person holding it to the office claimed. As it cannot be rightfully withheld from the person receiving the highest number of votes, and as the law provides no other remedy by which it can be obtained the circuit courts must have the power, in all cases in which it is improperly refused, to reach the officers who are delinquent in their ministerial duties."

In Hunt v. Hoffman, 125 Minn. 249, 146 N. W. 733, 735, being an action to compel a canvassing board to reconvene, recanvass returns, and to require the clerk to issue a certificate of election, the court said: "A right to a lawsuit to try title to a nomination does not afford an adequate remedy to one who is entitled to a certificate of nomination on the face of the returns."

Numerous cases of like import could be cited from other states. It is not sufficient that there may exist an adequate remedy in a general sense of the term, "but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the controversy." Spelling on Injunctions, § 1375; Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063; Territory v. Suddith, 15 N. M. 728, 110 P. 1038.

When this suit was brought, appellee could not have resorted to the legal remedies which appellants insist he had available to him. Had he waited until a certificate of election had issued, as would have occurred had not the secretary of state been restrained from acting in the premises, the particular relief he here seeks would have been foreclosed against him. The wrong—that is, the issuance of such certificate of election, upon false returns, to his opponent—would have already been accomplished; and his right to prevent it thus denied him. Such a course would not, in our opinion, have furnished him relief "specific and appropriate to the circumstances of the particular case."

Nor do we think there is any merit in appellants' contention that this suit is in effect against the Governor, or a board of which the Governor is a member. This contention is based upon the provisions of article 3034, R. S. 1925, which reads as follows: "On the fortieth day after the election, the day of election excluded, and not before, the Secretary of State in the presence of the Governor and Attorney General, or in case of vacancy in either of said offices, or of inability or failure of either of said officers to act, then in the presence of either one of them, shall open and count the returns of the election."

This article neither in express terms nor by implication constitutes the Governor, Attorney General, and the secretary of state a

state canvassing board. It does not impose any duties upon the Governor, nor require him to act in any way in the premises. If he chooses to act at all, it is only as a witness to a duty imposed upon the secretary of state, and he would no more be a party to official act of the secretary of state than would the witnesses to a document be parties to that instrument.

■ Appellants' next contention is that courts have no power of review nor authority to control the action of the commissioners' court as an election canvassing board, citing particularly Wells v. Commissioners' Court (Tex. Civ. App.) 195 S. W. 608; Jackson v. Houser (Tex. Civ. App.) 208 S. W. 186; Griffith v. State (Tex. Civ. App.) 216 S. W. 469; and Robinson v. Wingate, 36 Tex. Civ. App. 65, 80 S. W. 1067, 1071.

Jackson v. Houser merely holds that an election certificate is a conclusive evidence of right to an office until otherwise determined in a court of competent jurisdiction; and that an injunction will not lie in aid of an election contest. In that case an election contest was pending, and the trial court had enjoined the holder of the election certificate to the office of district clerk from qualifying, pending the outcome of the election contest. This decree was appealed from and dissolved on appeal, because the contestant had already resorted to his legal remedy. While language is used in the opinion to the effect that it was the province of the commissioners' court to determine whether particular returns should be estimated in a canvass, that issue was not before the court.

Griffith v. State was a quo warranto proceeding to try title to the office of county judge in which the office was awarded to the relator. The only questions decided by that case were, first, that it was improper to permit voters to testify as to how they voted, when the ballots themselves were available as evidence; and, second, that the "tally list" and so called "election returns" kept by the presiding officers of the election and signed only by the clerk of the election, and neither properly kept nor properly identified, were not admissible as evidence to show the results of such election.

The case of Robinson v. Wingate was an attack upon a local option election, seeking to prevent putting into force local option which had carried in Orange county, Tex. The court held in that case, as above stated, that the matter there in issue was a political question. But the issues there discussed are not pertinent here for two reasons: First, because the local option election laws have become obsolete through constitutional amendment; and, second, because this court in Clarey v. Hurst (Tex. Civ. App.) 136 S. W. 840, held that the local option election laws were complete within themselves, and that such elections were governed thereby, instead of by the general election laws. In discussing the duties of the commissioners' court in connection therewith, however, the court aptly said: "The measure of their duty in the premises is to perform the ministerial acts of canvassing the returns and publishing the result, and this duty the statute imposes in unequivocal terms."

The case of Wells v. Commissioners' Court is somewhat analogous to the one before us, but we do not consider it determinative of this case. The record does not disclose what facts were before the commissioners court in that case, causing them to refuse to canvass the box in question. In that case, involving only precinct officers, their canvass was a final canvass upon which a certificate of election was either to be issued or refused. The offices therein claimed were only precinct offices, and had, when suit was filed, already been filled by others under commissions issued by the Governor. In such case doubtless their only recourse was through a legal remedy.

But there can be no basis for appellants' contention that the acts of the canvassing board—and that is all the county judge and commissioners' court were so far as this case is concerned—are not subject to judicial review or controllable by judicial order, if, under the undisputed facts, they had no discretion in the matter and their duties were entirely ministerial. And we have concluded that they were wholly ministerial in the instant case.

■ It is now well settled that the provisions of the law prescribing the conduct of elections and regulating the character and manner of the returns, and how and when same shall be made, are only directory and not mandatory; and that irregularities in carrying out same, unless such irregularities result in tampering with the returns, or have prevented the voters from a free exercise of their suffrage, shall not vitiate such election. No such results are even hinted at in this case. The only irregularity shown was that the envelope in question was not sealed. In all other respects the returns were regular and in compliance with the law. Article 3031, under which the canvassing board rejected the returns from the Weslaco box, is not new. It was enacted in 1883, and has been brought forward in every revision of the statutes since that time. It is general in its terms, and requires only a substantial compliance with the provisions of title 50. With this article then in force the Supreme Court, as far back as 1887, in Fowler v. State, 68 Tex. 35, 3 S. W. 255, 257, laid down the rule above stated, wherein numerous irregularities appeared in connection with the returns, after holding that such matters constituted mere irregularities and informalities not disfranchising the voters, the court said: "Electors must not be deprived of their votes on account of any technical objection to the manner in which the election has been held, or for any misconduct on the part of its presiding officers, if these have not affected the true re-

sult of the election. Cooley Const. Lim. 617, 618; Prince v. Skillin, 71 Me. 361 [36 Am. Rep. 325]. This would be to deprive the citizen of a great constitutional privilege for a mere informality,—to place it within the power of a few persons to defeat the right of suffrage altogether. The very means provided to insure a fair and proper election might become an instrument of fraud and dishonesty. Hence, all such irregularities of the officers in the conduct and return of the election as have not prevented the electors from a free and fair exercise of the right of suffrage, and from having their votes fairly estimated for the candidate of their choice, and which the law has not declared shall set aside their ballots, must be treated as informalities not vitiating the election. This principle is to be taken with the qualification that it must be made to appear that the neglect or misconduct of the officers has not, in the particular case, prevented an honest and fair election."

In Mecaskey v. Ratliff (Tex. Civ. App.) 159 S. W. 115, it was held that returns inclosed in a paper box tied with a string should be counted, in the absence of a showing that same had been tampered with, or that such irregularity affected the free and fair exercise of the right of suffrage. This court held the same thing under the same facts in Hillman v. Kuykendall, 223 S. W. 242, and that returns otherwise regular, mailed to the county judge, should be counted. To the same effect is Scurlock v. Wingate (Tex. Civ. App.) 283 S. W. 307, 309; Worsham v. Richards, 46 Tex. 441; Yett v. Cook, 115 Tex. 175, 268 S. W. 715, 719, 281 S. W. 843; 20 C. J. p. 200, § 248; 9 R. C. L. 1110; Lehman v. Pettingell, 39 Colo. 258, 89 P. 48; Capper v. Anderson, 88 Kan. 385, 128 P. 207.

Manifestly, article 3031 did not authorize the disfranchisement by the canvassing board of 1,060 voters of the Weslaco box. And even if that article of the statute could be applied generally to such irregularities, in support of appellants' conduct in the instant case, it has been held by the Supreme Court that the literal meaning of a statute will be disregarded when it is clear that to follow it would work an absurdity and a manifest injustice. Gilmore v. Waples, supra; Edwards v. Morton, 92 Tex. 152, 46 S. W. 792. Undoubtedly a literal application of that article to the undisputed facts of this case would work just that result.

Having concluded that it was the clear ministerial duty of the canvassing board to estimate and include the returns from the Weslaco box, their refusal to do so was arbitrary and unauthorized. That they can be compelled to perform such duties, under the circumstances, is not an open question. Dean v. State, supra; Yett v. Cook, supra; 38 C. J. 677; 18 R. C. L. p. 277, § 205; Bennett v. Richards, supra; Riddell v. Childers, supra; Hunt v. Hoffman, supra.

Appellants' next contention is that the trial court erred in striking out upon demurrer Leslie's plea that, since the filing of the instant suit, the appellee has filed against said Leslie an election contest in the Seventy-Ninth district court of Hidalgo county. They insist that, having done so, that suit is a bar to the present suit and estops him from further prosecuting this suit; that he will not be allowed to ask for equitable relief in one court on the ground that he has no adequate remedy at law, and then go into another court and seek the same relief by asserting a purely legal remedy—by contesting the election.

Appellant Leslie's proposition of law is undoubtedly correct, but not here applicable. It is based upon the principle that a litigant cannot assert two inconsistent remedies at the same time. From what we have already said it is manifest we think that the relief sought in this suit is not the same as, nor is it inconsistent with, that to be afforded in an election contest. The parties are not the same, the venue is not the same, and the end sought is not the same. The right to have the election officers do their ministerial duty to the end that he may receive a certificate of election cannot be construed as in any manner a suit for the office itself. Such certificate vests in the holder only prima facie right to the office, but does not give him possession of it. And for the remedy in one court to supersede that asserted in another, it must be both adequate and equally effective. Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063.

Appellants next assert error of the trial court in striking out on demurrer their allegations that one reason for their refusal to open and estimate the returns from the Weslaco box was that they were advised that many persons had voted on some form of affidavit, the nature of which was unknown to them, and such affidavits did not accompany the returns from that box as required by article 3004, R. S.

There was no error in this. Article 3004 is clearly for the guidance of the election judges in allowing those entitled to vote to do so. The affidavits therein provided for are no part of the returns forwarded to the county judge. Nor did the appellants allege in that connection that any illegal votes were cast in the Weslaco box, nor that any one who voted upon such affidavit was not a qualified voter. In the absence of such showing, their votes were entitled to be counted, which was done by the election officers, the returns duly made showing the result, behind which the canvassing board was not authorized to go. It is not the province of a canvassing board to pass upon the qualification of the voters, or whether they have presented to the election judges proper evidence of their right to vote. See Stinson v. Gardner, 97 Tex. 287, 78 S. W. 492.

Under the view we take of this case, and in

542

the light of the peremptory instruction from the court to the jury to find for the appellee, the testimony of appellee as to the issues of the campaign and charges made by him in speeches against what was known as the "administration group" become wholly immaterial.

██ Nor is there any merit in appellants' contention that the evidence was conflicting as to whether the envelope containing said returns had ever been sealed; and that therefore that issue should have gone to the jury. On that issue the court found in favor of appellants, and they are in no position to complain.

In conclusion, it appears that an election, in all respects legal, was held in the Weslaco precinct, by duly elected, competent, and qualified officials and clerks; that during the entire procedure, from the opening of the polls until all votes were counted and the returns duly made up, a Texas ranger was present, manifestly to see that such election was fair; that said ranger accompanied the election judge in the same automobile who took these returns in person and delivered them to the county judge; and that the only irregularity in the whole proceeding was that, obviously through oversight, the envelope in which such returns were transmitted was not sealed. There is no indication that such irregularity in any manner cast any suspicion upon the genuineness or legality of the returns themselves, or that a full, fair, and free expression of the will of the qualified voters was not had. If, under such circumstances, the county canvassing board had any discretion in the matter, we think that it was so flagrantly and palpably abused that their action became arbitrary; and that mandatory steps to correct such action were proper. In speaking of the use of a mandatory writ the Supreme Court in Yett v. Cook quotes with approval the rule laid down in Cyc. that, amongst other things, "it may also be employed to prevent an abuse of discretion, or an act outside of the exercise of discretion, or to correct an arbitrary action which does not amount to the exercise of discretion."

██ It follows, therefore, we think, that the returns as sent by the county judge to the secretary of state were false, in that they showed the election of Leslie as district judge by a majority of 14 votes, when in fact Griffin had been elected by a majority of 582 votes. Based upon such false returns, the secretary of state had no lawful right to issue a certificate of election to Leslie, as it admittedly appears that she would have done unless restrained. The proper method to prevent such action by the secretary of state was by injunction. Staples v. State (Tex. Civ. App.) 244 S. W. 1068, 1071. The district court of Travis county had jurisdiction to do that. With the matter thus before that court

it also had jurisdiction over the appellants in connection therewith and over the other matters presented in this appeal, with power to grant full relief in the premises. Having properly acquired jurisdiction over the parties and the subject-matter, it is immaterial whether the relief granted be considered as a mandatory injunction or in the nature of a mandamus so long as such relief be only that to which appellee showed himself entitled. McLaughlin v. Smith, 105 Tex. 330, 148 S. W. 288; City of Dallas v. McElroy (Tex. Civ. App.) 254 S. W. 599.

It appearing that the date within which appellants were ordered to comply with the judgment of the trial court, to wit, April 29, 1929, has passed, the time fixed in said decree is hereby extended so as to require appellants to comply with the trial court's decree on a day not later than 30 days from and after the date of filing in said trial court of the mandate issued from this court in this appeal. As thus modified the judgment of the trial court is in all things affirmed.

Affirmed.